1

2                                        FILED 07 JUL '25 11:50 USDC-ORP

3

4

5

6

7

8

9

10                         UNITED STATES DISTRICT COURT
                     DISTRICT OF OREGON, PORTLAND DIVISION
11

12

13    JEREMY CONKLIN, D.O., an individual;      NO. 3:25-cv-1173-AR

14                    Plaintiff

15                                              COMPLAINT
              vs.                               FOR DAMAGES
16

17    OREGON MEDICAL BOARD, an Oregon           *JURY DEMAND*
18    State Agency; Nicole Krishnaswami, an
      individual; Michael Seidel, an individual; and   *CONFIDENTIAL MATERIAL*
19    Walter Frasier, an individual, and et al.;

20                    Defendants

21          Dr. Jeremy Conklin, D.O. ("Plaintiff"), requests compensatory and punitive

22    damages, injunction, Writ of Mandamus, attorney's fees, and costs for the wrongful

23    conduct of the Defendants as set forth below:

24

25

26

COMPLAINT FOR DAMAGES – 1

Jeremy Conklin
1414 10th Ave, Apt 734E
Seattle, Washington 98122
(570) 764-0102
jhconklin@icloud.com

# 112591

1

2                                **PARTIES**

3    1. Dr. Jeremy Conklin, D.O., "Plaintiff", is a resident of the state of Washington.

4       He is an osteopathic physician and surgeon. In July 2018, Plaintiff started the

5       application process for an Oregon Medical License.

6    2. Defendant, Oregon Medical Board ("OMB") is an Oregon State Agency located

7       in Portland, Oregon. OMB regulates the practice of medicine in the state of

8       Oregon. The OMB knowingly and willingly participated in violations of 42

9       U.S.C. § 1983.

10   3. Defendant, Ms. Nicole Krishnaswami is an individual residing in the state of

11      Oregon. Ms. Krishnaswami is the executive director of the OMB. Ms.

12      Krishnaswami is an attorney licensed in Oregon, OSB #: 104293. Ms.

13      Krishnaswami knowingly and willingly participated in violations of 42 U.S.C. §

14      1983, which violated her Oregon State Bar Oath as described herein.

15   4. Defendant, Mr. Michael Seidel is an individual residing in the state of Oregon.

16      Mr. Seidel is an investigator with the OMB. Mr. Seidel knowingly and

17      willingly participated in violations of 42 U.S.C. § 1983 as described herein.

18   5. Defendant, Mr. Walter Frasier is an individual residing in the state of Oregon.

19      Mr. Frasier is the investigations manager for the OMB. Mr. Frasier knowingly

20      and willingly participated in violations of 42 U.S.C. § 1983 as described herein.

21

22                        **VENUE AND JURISDICTION**

23   6. This Court has jurisdiction pursuant to federal question jurisdiction authorized

24   under 28 U.S.C. §1331 for Plaintiff's claims against Defendants for violations of the

25   deprivation of any rights, privileges, or immunities secured by the United States

26   Constitution and United States Laws under 42 U.S.C. § 1983.

COMPLAINT FOR DAMAGES – 2

Jeremy Conklin
1414 10th Ave, Apt 734E
Seattle, Washington 98122
(570) 764-0102
jhconklin@icloud.com

1    Venue is proper because the OMB has offices in Portland, Oregon, and the

2  defendants reside in the state of Oregon.

3        7. Plaintiff provided a Notice of Claim with Oregon Risk Management,

4            Department of Administrative Services.

5                                    **FACTS**

6        8. In July 2018, Plaintiff applied for an Oregon Medical License to practice

7            medicine in Oregon at Providence Medford Medical Center as a locum tenens

8            physician through CompHealth.

9        9. A CompHealth employee, McKay McFarland, assisted Plaintiff with

10           completing his Oregon Medical License Application.

11       10. Ms. McFarland was told by the OMB that because Plaintiff does not live or

12           practice within 100 miles of the Oregon border that he does not qualify for an

13           active Oregon Medical License.  However, because Plaintiff was performing

14           Locum Tenens services in Oregon, he qualified for a Locum Tenens Oregon

15           Medical License. See Exhibit AA (OAR 847-008-0020).

16

17       11. Plaintiff submitted his application for an Oregon Medical License under the

18           status of Locum Tenens.  On 5 Sept 2018, Plaintiff received a Notice of Civil

19           Penalty from the Oregon Medical Board.   See Exhibit BB (Notice of Civil

20           Penalty).   The notice stated Plaintiff violated Oregon Administrative Rule

21           847-008-0058, and fined Plaintiff $195 for incorrectly completing his Oregon

22           Medical License application.  Plaintiff's Oregon Medical License would not be

23           issued until the matter was closed.

24       12. The notice informed Plaintiff that he could request a hearing before an Oregon

25           Administrative Law Judge. However, the notice also stated that in the event of

26           a hearing the OMB would be seeking the costs associated with the hearing.

COMPLAINT FOR DAMAGES – 3

**Jeremy Conklin**
1414 10th Ave, Apt 734E
Seattle, Washington 98122
(570) 764-0102
jhconklin@icloud.com

13. Plaintiff submitted a motion to dismiss the civil penalty to the OMB because Plaintiff's actions, erroneously completing his Oregon Medical Board Application, did not have the commensurate Mens Rea to conclude Plaintiff's actions were Fraud or Misrepresentation under OAR 847-008-0058. The OMB ignored Plaintiff's motion to dismiss civil penalties. See Exhibit CC (E-mail from OMB).

14. To expedite issuance of his Oregon Medical License, so he could work in Oregon, Plaintiff paid the $195 civil penalty.

15. The OMB issued Plaintiff a Locum Tenens Oregon Medical License on 12 Oct 2018. See Exhibit DD (Oregon Locums Medical License).

16. On 6 Oct 2020, the Oregon Medical Board sent Plaintiff a notice that he had not completed an Oregon Locum Tenens form to show that Plaintiff had worked in Oregon from 2018-2019.

17. Proof of employment as a physician in Oregon was required for Plaintiff to renew his Locum Tenens Oregon Medical License.

18. Proof of employment as a physician in Oregon is not required for Oregon Medical License renewals for physicians who are residents of Oregon and have an active Oregon Medical License.

19. Plaintiff had previously asked the board why he could not apply for an active Oregon Medical License, so he would not need to submit proof of locum tenens employment each year.

20. The OMB responded that because Plaintiff did not live in Oregon, but intermittently practiced medicine less than 240 days in Oregon every two years, that Plaintiff was eligible for a Locum Tenens Oregon Medical License and not

Jeremy Conklin
1414 10th Ave, Apt 734E
Seattle, Washington 98122
(570) 764-0102
jhconklin@icloud.com

eligible for an Active Oregon Medical License. See Exhibit EE (E-mail form OMB refusing to provide active Oregon Medical License).

21. Plaintiff completed the Locum Tenens Assignment Form and submitted the Locum Tenens Assignment Form to the OMB. As a result, Plaintiff's Locum Tenens Oregon Medical License was renewed.

22. On 31 Jan 2024, the OMB sent Plaintiff a notification that if he did not report a locum tenens assignment in Oregon by 7 Feb 2024, his Oregon Locum Tenens license would be changed to inactive. See Exhibit FF (E-mail from OMB warning Plaintiff to submit proof of Locum assignment in Oregon).

23. On 8 Feb 2024, the OMB changed Plaintiff's Locum Tenens Oregon Medical License to inactive status because Plaintiff had not reported any locum tenens assignments in Oregon. See Exhibit GG (Notice inactivating Dr. Conklin's Oregon Medical License.)

24. On 5 Jun 2023, Plaintiff was scheduled to perform a locums surgery assignment at Salem Hospital in Salem, OR. Plaintiff was scheduled to work the night shift.

25. During Plaintiff's first night, Plaintiff saw five patients who all required emergency surgeries, Patient A, Patient B, Patient C, and Patient D. Plaintiff attempted to schedule all patients for emergency surgery that evening.

26. Plaintiff was told by the Salem Hospital Operating Room ("OR") staff that there were several cases already scheduled for the OR and that no operating rooms, or teams to staff an operating room, were available.

27. Plaintiff contacted one of the permanent surgeons who worked at Salem Hospital, Dr. Patrick O'Herron, and explained to Dr. O'Herron that he could not get all the emergent cases to the operating room. Dr. O'Herron recommended

Jeremy Conklin
1414 10th Ave, Apt 734E
Seattle, Washington 98122
(570) 764-0102
jhconklin@icloud.com

1    having the cases scheduled for the next morning.    See Exhibit HH (Text
2    messages to and from Dr. Patrick O'Herron).

3    28. Delay in operating on Patient B led to Patient B's death.

4    29. Plaintiff was able to schedule one of his cases, Patient A, who had an
5    incarcerated left inguinal hernia.  Because it was Plaintiff's first night working
6    at Salem Hospital, Plaintiff was required to be proctored for his first case.

7    30. Dr. Carrie Allison proctored Plaintiff's left inguinal hernia case.

8    31. During the case Dr. Allison disagreed with Plaintiff's pre-operative, and
9    operative management of the Patient A.  As a result of the disagreements Dr.
10    Allison asked Plaintiff to leave the operating room in the middle of the case, so
11    Dr. Allison could complete the case.
12
13    32. On 6 Jun 2023, Plaintiff filed a Disruptive Physician Complaint against Dr.
14    Allison, with the Salem Health Medical Director and Salem Health CEO,
15    because Dr. Allison interfered with Plaintiff's treatment of Patient A.    See
16    Exhibit II (E-mail to Salem Hospital Medical Director for Disruptive Physician
17    Complaint).

18    33. On 6 Jun 2023, Salem Hospital cancelled Plaintiff's locum tenens assignments.

19    34. Plaintiff's contract stated that to cancel Plaintiff's shifts, Salem Hospital must
20    provide at least 30 days' notice of the cancellation.  If Salem Hospital did not
21    provide at least 30 days' notice, then Salem Hospital was responsible for paying
22    Plaintiff for the cancelled shifts.

23    35. If Salem Hospital showed Plaintiff was a danger to patients, then Salem
24    Hospital could cancel Plaintiff's shifts at any time without 30 days' notice and
25    would not be required to pay for Plaintiff's cancelled shifts.

26

COMPLAINT FOR DAMAGES – 6

Jeremy Conklin
1414 10th Ave, Apt 734E
Seattle, Washington 98122
(570) 764-0102
jhconklin@icloud.com

1      36. Salem Hospital cancelled Plaintiff's shifts on 6 Jun 2023, which is less than 30

2          days' notice.    Therefore, Salem Hospital was contractually obligated to pay

3          Plaintiff for the remainder of his shifts, 5 Jun 20243 – 9 Jun 2023.

4      37.   Salem Hospital refused to pay Plaintiff for the shifts it cancelled from 5 Jun to

5          9 Jun 2023.

6      38. On 5 Jul 2023, Plaintiff received notice of a complaint from the OMB.

7      39. The  5  Jul  2023  OMB  Complaint  alleged  Plaintiff  provided  medically

8          incompetent care and acted in an unprofessional and dishonorable manner. See

9          Exhibit JJ (OMB complaint sent to Dr. Conklin).

10     40. On 16 Jul 2023, Plaintiff responded to the OMB. See Exhibit KK (Dr. Conklin

11         16 Jul 2023 response to OMB 5 Jul 2023 complaint, followed by 20 Sept 2023

12         e-mail asking for specific allegations).

13     41. On 6 Oct 2023, the Salem Hospital Peer Review Committee reviewed the

14         treatment of Patient A, Patient B, Patient C, and Patient D.

15     42. The  Salem  Hospital  Peer  Review  Committee  reviewed  the  care  Plaintiff

16         provided  to  the  same  patients  the  OMB  alleged  that  Plaintiff  provided

17         medically incompetent care and behaved in an unprofessional and dishonorable

18         manner.

19     43. The Salem Hospital Peer Review Committee concluded there were no standards

20         of  care  deficiencies  with  Plaintiff's  care,  and  care  was  provided  in  a

21         professional and honorable manner.    See Exhibit OO (Salem Hospital Peer

22         Review Results).

23

24     44. On 6 Oct 2023, Plaintiff passed and completed the renewal of his General

25         Surgery  Board  Certification  through  the  American  Osteopathic  Board  of

26

COMPLAINT FOR DAMAGES – 7

**Jeremy Conklin**
1414 10th Ave, Apt 734E
Seattle, Washington 98122
(570) 764-0102
jhconklin@icloud.com

Surgery, AOBS, General Surgery Longitudinal Assessment. See Exhibit PP (E-mail from AOA regarding ABOS pass).

45. Passage of the AOBS Longitudinal Assessment is required for Board Certification in General Surgery.

46. By successfully completing the AOBS Longitudinal Assessment the Plaintiff renewed his General Surgery Board Certification, which showed the Plaintiff has the knowledge and skills needed to provide safe and effective care in a specific area of surgery. It is a credential that patients can rely upon when selecting a doctor for their needs.

47. On 6 Dec 2023, after receiving specific allegations regarding incompetent medical care from the OMB, Plaintiff submitted a detailed summary of his actions to the OMB. See Exhibit LL (Dr. Conklin's Detailed Summary).

48. On 7 Jun 2024, Plaintiff received an Order for Evaluation and Qualified Protective Order from the OMB. The Order for Evaluation and Qualified Protective Order directed the Plaintiff to undergo evaluation by the Center for Professionalized Education for Professionals in Colorado and an Acumen Assessment in Kansas. The evaluations were at the Plaintiff's own expense. See Exhibit MM (OMB Order for Evaluation).

49. On 4 Sept 2024, the OMB requested Plaintiff attend an in-person interview at the OMB Office in Portland, OR. Plaintiff agreed to a Zoom interview because Plaintiff lived in Seattle, WA. See Exhibit NN (E-mails between OMB and Dr. Conklin).

50. The OMB refused to provide Plaintiff Zoom interview accommodations and required Plaintiff to attend an in-person interview in Portland on 5 Dec 2024.

COMPLAINT FOR DAMAGES – 8

Jeremy Conklin
1414 10th Ave, Apt 734E
Seattle, Washington 98122
(570) 764-0102
jhconklin@icloud.com

1    51. On 3 Jun 2025, OMB issued a Notice of Proposed Disciplinary Action to the

2        Plaintiff. The Notice of Proposed Disciplinary Action contained allegations not

3        based in fact from the medical records. The allegations in the Notice of

4        Proposed Disciplinary Action were not judged against the standard of care. See

5        Exhibit XX (Notice of Proposed Disciplinary Action).

6

7                        **CLAIMS**

8

9                ***First Cause of Action:***

10    ***Violation of 42 U.S.C. § 1983 – Violation of Right of Due Process***

11               ***(Against all Defendants)***

12    52. Plaintiff re-alleges the facts as set forth in paragraphs 1-51 of his Complaint as

13        though fully set forth herein.

14    53. OMB violated Plaintiff's U.S. Constitutional 14th Amendment Right of Due

15        Process by refusing to provide Plaintiff:

16         a.  An unbiased tribunal.

17         b.  Notice of the proposed action and the ground asserted for it.

18         c.  Opportunity to present reasons why the proposed action should not be

19            taken.

20         d.  The right to present evidence, including the right to call witnesses.

21         e.  The right to know opposing evidence.

22         f.  The right to cross-examine adverse witnesses.

23         g.  A decision based exclusively on the evidence presented.

24         h.  Requirement that the tribunal prepare a record of the evidence

25            presented.

26

COMPLAINT FOR DAMAGES – 9

**Jeremy Conklin**
1414 10th Ave, Apt 734E
Seattle, Washington 98122
(570) 764-0102
jhconklin@icloud.com

i.   Requirements that the tribunal prepare written findings of fact and reasons for its decision.

54. On 5 Jul 2023, the OMB sent the Plaintiff a letter requesting a summary report for allegations that the Plaintiff provided medically incompetent care and acted in an unprofessional and dishonorable manner.

55. The letter did not describe what care was medically incompetent, unprofessional, or dishonorable.

56. The letter did not state which patients received medically incompetent, unprofessional, or dishonorable care. The letter failed to provide adequate notice. (See Exhibit JJ.)

57. Plaintiff complied with OMB's requests for a detailed summary of care for patients: Patient A, B, C, and D on 6 Dec 2023, after the OMB provided some details regarding alleged incompetent care.

58. On 7 Jun 2024, the OMB issued an order that Plaintiff undergo evaluation by the Center for Professional Education for Professionals in Colorado, specific to: General Surgery with emphasis on trauma and other acute presentations at Plaintiff's own expense. (See Exhibit MM.)

59. On 7 Jun 2024, the OMB issued an order that Plaintiff undergo Acumen Assessments in Kansas at Plaintiff's own expense. (See Exhibit ZZ.)

60. The OMB required the evaluation by the Center for Professional Education for Professionals be completed within 150 days of the 7 Jun 2024 order.

61. The OMB required the Acumen evaluation to be completed within 90 days of the 7 Jun 2024 order.

62. The Plaintiff was required to pay for the evaluations, which in total would cost over $10,000.00 plus cost of travel, lodging, and lost work.

COMPLAINT FOR DAMAGES – 10

Jeremy Conklin
1414 10th Ave, Apt 734E
Seattle, Washington 98122
(570) 764-0102
jhconklin@icloud.com

63. The OMB order did not provide the Plaintiff reasons why the proposed evaluations were necessary, or the grounds asserted for the evaluations.

64. The OMB order did not provide the Plaintiff the right to know evidence asserted for ordering the evaluations.

65. The OMB's order did not provide the Plaintiff the right to call witnesses to refute any of the OMB's allegations.

66. The OMB did not provide the Plaintiff the right to cross examine adverse witnesses who provided information for the OMB's evaluation order.

67. The OMB did not provide the Plaintiff the right to an unbiased tribunal.

68. The executive director, Nicole Krishnaswami, issued the order, instead of an unbiased tribunal.

69. The OMB did not prepare a record of the evidence presented or use a record of the evidence presented when issuing its evaluation order.

70. The OMB did not prepare a written finding of facts and reasons for its decision to order Plaintiff to be evaluated.

71. On 6 Oct 2023, the Salem Hospital Peer Review Committee reviewed the cases of Patient A, B, C and D, who were the patient's Plaintiff treated, which OMB claimed Plaintiff provided incompetent medical care. The Salem Hospital Peer Review Committee found no standards of care were breached and no care was provided in an unprofessional or dishonorable manner. The Salem Hospital Peer Review Committee conclusions did not recommend any changes to the Plaintiff's privileges or credentials. If the Plaintiff's practice of medicine was egregious as the OMB claims, why did not the Salem Hospital Peer Review Committee recommend changes to the Plaintiff's privileges and credentials?

COMPLAINT FOR DAMAGES – 11

**Jeremy Conklin**
1414 10th Ave, Apt 734E
Seattle, Washington 98122
(570) 764-0102
jhconklin@icloud.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

72. On 6 Oct 2023, the Plaintiff successfully completed General Surgery Board Re-Certification with the American Board of Osteopathic Surgery Longitudinal Assessment, which is required for continued AOA Board Certification.

73. AOA Board Certification for physicians is a voluntary credential that demonstrates a physician's knowledge and skills in surgery.

74. AOA Board Certification is a way for physicians to show their commitment to lifelong learning, high professional standards, and providing safe and quality care.

75. In *Irland v. Iowa Board of Medicine*, 939 NW 2d 85 – Iowa: Supreme Court, 2020, the Iowa Board of Medicine ordered Dr. Irland to complete a comprehensive clinical competency evaluation in a letter issued to Dr. Irland. The Iowa Supreme Court held "The Board lacks the statutory authority to impose discipline without finding probable cause of a violation and without giving the physician an opportunity to challenge the alleged violation."

76. The OMB violated Plaintiff's U.S. Constitutional 14th Amendment Right of Due Process when the OMB ordered Plaintiff to undergo Center for Personalized Education for Professionals in Colorado and Acumen Assessment in Kansas, which deprived the Plaintiff of property, without affording the Plaintiff due process.

77. OMB's Order for Evaluation violates 42 U.S.C §1983.

78. Because of OMB's violation of 42 U.S.C. § 1983, Plaintiff has been damaged in an amount to be proven at trial.

79. *Monroe v. Pape*, 365 U.S. 167 (1961) held that state officers who violated Plaintiff's Constitutional Rights can be sued under 42 U.S.C. § 1983.

80. Each of the Defendants is jointly and severally liable for Plaintiff's damages.

COMPLAINT FOR DAMAGES – 12

**Jeremy Conklin**
1414 10th Ave, Apt 734E
Seattle, Washington 98122
(570) 764-0102
jhconklin@icloud.com

81. The Court should issue a declaratory judgment that Defendant's action constitutes violations of 42 U.S.C. § 1983.

82. The Court should issue a preliminary injunction preventing the OMB's investigation into Plaintiff from progressing until the instant case has been adjudicated.

83. The Court should also issue a permanent injunction appointing a Special Master to observe all OMB investigations and punitive actions for 5 years, funded by the OMB. The Special Master will ensure the OMB is providing due process in all investigative and punitive actions.

***Second Cause of Action:***
***Violation of 42 U.S.C. § 1983 – Violation of Privileges and Immunities Clause of U.S. Constitution***
***(Against OMB and Ms. Nicole Krishnaswami)***

84. Plaintiff re-alleges the facts as set forth in paragraphs 1-51 of his Complaint as though fully set forth herein.

85. On 17 Jun 2019, Plaintiff sent OMB a letter inquiring about obtaining an Active Oregon Medical License.

86. Plaintiff had been issued a Locum Tenens Oregon Medical License in 2018.

87. On 21 Jun 2019, OMB replied to Plaintiff's letter inquiring about obtaining an Active Oregon Medical License.

88. OMB stated that Plaintiff was not eligible for an Active Oregon Medical License because the Plaintiff did not live in Oregon, or regularly practice medicine in Oregon.

89. In its response, OMB referred to language from the OMB's Statement of Purpose, "Recognized that to practice medicine is not a natural right of any person, but is a privilege granted by legislative authority, it is necessary, in the

COMPLAINT FOR DAMAGES – 13

**Jeremy Conklin**
1414 10th Ave, Apt 734E
Seattle, Washington 98122
(570) 764-0102
jhconklin@icloud.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

interests of health, safety, and welfare of the people of this state to provide for granting of that privilege and the regulation of it use…"

90. On 31 Jan 2024, the OMB sent Plaintiff a final reminder e-mail that if the Plaintiff did not submit proof of Locums Tenens assignments in Oregon by 7 Feb 2024, the Plaintiff's Oregon Medical License would be placed in inactive status.

91. On 8 Feb 2024, the Plaintiff received a letter from Ms. Nicole Krishnaswami, Executive Director of the OMB, inactivating Plaintiff's Oregon Medical License.

92. The Privileges and Immunities Clause of the U.S. Constitution provides that citizens of one state are entitled to equal treatment with citizens of other states.

93. The State of Oregon cannot treat citizens of one state differently than citizens of Oregon.

94. Furthermore, the U.S. Supreme Court held that "[O]ne of the privileges which the Clause guarantees to citizens of State A is that of doing business in State B on terms of substantial equality with the citizens of that State." *Supreme Court of N.H. v. Piper, 470 U.S. 274(1985).*

95. The OMB refused to provide Plaintiff an Active Oregon Medical License because the Plaintiff was not a citizen of Oregon.

96. The OMB treated Plaintiff differently than Oregon citizens because the Plaintiff did not reside in Oregon.

97. On 8 Feb 2024, the OMB inactivated Plaintiff's Oregon Locum Tenens Medical License because Plaintiff did not work the requisite shifts as a physician in Oregon. Physicians who reside in Oregon do not have to report the number of shifts they have worked to prevent their Oregon Medical Licenses from being inactivated.

COMPLAINT FOR DAMAGES – 14

Jeremy Conklin
1414 10th Ave, Apt 734E
Seattle, Washington 98122
(570) 764-0102
jhconklin@icloud.com

98. The OMB's disparate treatment of the Plaintiff, with respect to issuing an Active Oregon Medical License, and inactivating the Plaintiff's Oregon Locum Tenens Medical License violated the Plaintiff's U.S. Constitution's Privileges and Immunities Clause Rights.

99. Violation of Plaintiff's U.S. Constitution's Privileges and Immunities Clause Rights violates 42 U.S.C. § 1983.

100. Because of OMB's violation of 42 U.S.C. § 1983, Plaintiff has been damaged in an amount to be proven at trial.

101. *Monroe v. Pape*, 365 U.S. 167 (1961) held that state officers who violated Plaintiff's Constitutional Rights can be sued under 42 U.S.C. § 1983.

102. OMB and Ms. Nicole Krishnaswami, are jointly and severally liable for Plaintiff's damages.

103. The Court should issue a declaratory judgment finding that Defendant's action constitutes violations of 42 U.S.C. § 1983.

104. The Court should issue a permanent injunction preventing the OMB from treating physicians who are not residents of Oregon differently than physicians who are residents of Oregon.

***Third Cause of Action:***
***Violations of 42 U.S.C. § 1983 Violation of U.S. Constitution 14th Amendment Due Process, Equal Protection, and Violation of Oregon Revised Statute 31.230 Wrongful Use of Civil Proceeding.***

105. On 3 Jun 2025, the OMB submitted a Notice of Proposed Disciplinary Action to the Plaintiff.

106. The Notice of Proposed Disciplinary Action makes allegations not supported by facts in the medical records and contradicts the medical record.

COMPLAINT FOR DAMAGES – 15

**Jeremy Conklin**
1414 10th Ave, Apt 734E
Seattle, Washington 98122
(570) 764-0102
jhconklin@icloud.com

1

2    107. The Notice of Proposed Disciplinary Action proposes to sanction Plaintiff by

3         revoking Plaintiff's Oregon Medical License, and fine Plaintiff $10,000 per

4         violation not to exceed $100,000.

5    108. OMB alleges that Patient A was on multiple medications that inhibited clotting,

6         placing Patient A at higher risk of bleeding. OMB alleges that Plaintiff did not

7         consent Patient A for a blood transfusion prior to surgery considering Patient

8         A's increased risk of bleeding.

9    109. Plaintiff counseled Patient A regarding risks of bleeding, which was

10        documented in Plaintiff's consult note. (See Exhibit YY - History and Physical

11        Exam for Patient A.)

The pt was informed that the surgery was necessary to preserve his bowel from becoming ischemic and necrotic. The pt was informed that the surgery would be an open surgical procedure, much different than his prior right inguinal hernia repair. Due to the severity of the pt's left hernia, the pt was advised that the surgery may involve resection of bowel, a counter incision in his midline abdomen, and possible colostomy. The pt was advised that because he is taking Plavix for his coronary stents that he has a higher risk of bleeding, and it is possible that the pt may need blood products. The pt was also advised that he has a risk of infection due to his smoking and diabetes, which increase his risk of surgical site infection. The pt understood all the risks. The benefit of the procedure would be to reduce incarcerated bowel and repair the hernia defect. The pt understood the benefits. The pt agreed to proceed with surgery.

This procedure has been fully reviewed with the patient, and written informed consent has been obtained.

Patient A's History and Physical 5 Jun 2023 performed by Dr. Jeremy Conklin.

110. Plaintiff consented Patient A to receive a blood transfusion on the surgical

     consent form (See Exhibit QQ - Surgical Consent for Patient A). Please notice

     that the check box on the surgical consent is not marked for "I refuse

     administration of part, or all blood and blood products as documented on the

     Refusal of Blood Transfusions Release of Liability Form." Because the check

     box was not checked the patient agreed to "It was also explained to me that

     there are possible risks involved with blood/blood product transfusion. I

     understand the risks and consent to the administration of blood/blood products

     if medically necessary and ordered by my physician."

COMPLAINT FOR DAMAGES – 16

Jeremy Conklin
1414 10th Ave, Apt 734E
Seattle, Washington 98122
(570) 764-0102
jhconklin@icloud.com

1
2

It was also explained to me that there are possible risks involved with blood/blood product transfusion. I understand these risks
and consent to the administration of blood/blood products if medically necessary and ordered by my physician.

3

☐ I refuse administration of personal blood and blood products as documented on the Refusal of Blood Transfusions Release of
Liability Form.

4
5

Patient A's Surgical Consent Form 5 Jun 2023.

6     111. OMB alleges that Plaintiff failed to prepare blood products by obtaining a type

7         and screen or cross for blood products prior to Patient A's surgery. Patient A

8         underwent emergency surgery to save his life. Waiting for the results of a type

9         and screen or cross would have delayed Patient A's surgery placing Patient A at

10        higher risk for death or disability. For emergency surgery, in which bleeding

11        occurs, the hospital has universal donor blood that can be administered

12        immediately. The OMB was aware of this fact and neglected to consider these

13        facts to intentionally injury Plaintiff.

14    112. During Patient A's Surgery Dr. Carrie Allison ordered platelets and

15        Desmopressin to counter act Patient A's anti-platelet medications of Plavix and

16        Aspirin. Plaintiff told Dr. Allison that administering platelets and

17        Desmopressin would not reverse the effects of Plavix and only waste the

18        valuable resource of platelets and expose the patient to a possible transfusion

19        carried infection.

20    113. OMB alleged that Plaintiff ordered deep venous thrombosis (DVT) prophylaxis

21        of heparin after Patient A's surgery. OMB alleges that DVT prophylaxis placed

22        the patient at risk of increased bleeding.

23    114. The Padua Prediction Score for Risk of Venous Thromboembolism (VTE) is a

24        tool to estimate the risk of VTE in hospitalized patients. The Padua Score has

25        been validated through multiple peer reviewed studies. Patient A had reduced

26        mobility, recent surgery (hernia surgery), Heart Failure, and recent myocardial

COMPLAINT FOR DAMAGES – 17

Jeremy Conklin
1414 10th Ave, Apt 734E
Seattle, Washington 98122
(570) 764-0102
jhconklin@icloud.com

1

2

3

4

5

infarction, which gave the patient a Padua Score of 7. A Padua Score of 7 is high risk for VTE and pharmacologic prophylaxis is indicated. Patient A was placed on DVT prophylaxis of heparin as recommended by the Padua Score per the standard of care. The OMB was aware of this fact and neglected to consider these facts to intentionally injury Plaintiff.

6

7

8

9

10

11

12

13

14

15

16

115. Plaintiff consented Patient A for hernia repair surgery. Plaintiff's name was on the surgical consent form. The Plaintiff's first night was 5 Jun 2023. Because 5 Jun 2023, was Plaintiff's first night, Plaintiff was required to be proctored by Dr. Carrie Allison. Dr. Allison disagreed with Plaintiff's hernia repair technique and contravened several of Plaintiff's operative decisions. Dr. Allison interfered with Plaintiff's operation. Eventually, Dr. Allison asked Plaintiff to leave the operating room so Dr. Allison could complete Patient A's hernia repair. So as not to upset the operating room team, Plaintiff removed himself from the surgery. Plaintiff immediately filed a Disruptive Physician complaint against Dr. Allison with Salem Hospital Medical Director and Salem Health CEO (See Exhibit II - Letter to CEO Disruptive Physician).

17

18

19

20

21

22

116. Dr. Allison's name was not on the surgical consent. Thus, Patient A never gave Dr. Allison permission to operate on him. Because Dr. Allison did not have consent to operate on Patient A, and Dr. Allison operated on Patient A, Dr. Allison committed battery upon Patient A. The OMB did not investigate or pursue disciplinary action against Dr. Allison. The OMB was aware of this fact and neglected to consider these facts to intentionally injury Plaintiff.

23

24

117. The OMB alleges Plaintiff ordered Golytely, a bowel preparation medication, for Patient B, who had a perforated duodenal ulcer.

25

26

118. The OMB alleges upon entering Patient B's abdomen the surgeon, Dr. VanDerHeyden, found the peritoneal space to be filled with GoLytely.

COMPLAINT FOR DAMAGES – 18

Jeremy Conklin
1414 10th Ave, Apt 734E
Seattle, Washington 98122
(570) 764-0102
jhconklin@icloud.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

119. Patient B's Medication Administration Record (MAR) shows that Patient B received no GoLytely on 5 Jun 2023. (See Exhibit RR - MAR Patient B). Furthermore, Patient B's MAR shows that Plaintiff discontinued Patient B's GoLytely, which Dr. Webber, Patient B's physician ordered.

**polyethylene glycol-electrolyte (Golytely) oral liquid 4,000 mL [211240475]**

| Ordering Provider: Webber, Sarah N, MD | Status: Discontinued (Past End Date/Time) |
|---|---|
| Ordered On: 06/05/23 2038 | Starts/Ends: 06/05/23 2130 - 06/05/23 2221 |
| Ordered Dose (Remaining/Total): 4,000 mL (1/1) | Route: Oral |
| Frequency: ONCE | Ordered Rate/Order Duration: — / — |

Admin Instructions: Have patient drink as tolerated gradually over time, do not force over a certain period of time per surgery.

| Timestamps | Action / Reason | Dose | Route | Other Information |
|---|---|---|---|---|
| Performed 06/05/23 2130 Documented: 06/05/23 2129 | Held Other (add comment) | 0 mL | Oral | Performed by: Lyon, Gisselle, RN Comments: TRACS MD at bedside, per MD hold Golytely |

Patient B's Medication Administration Record (MAR) 5 Jun 2023.

120. Dr. VanDerHeyden's Operative Note stated, "Upon entry a large amount of fluid and gas was encountered." (See Exhibit SS - Operative Note for Patient B). There is no mention of finding GoLytely in the Operative note.

A midline incision was made from the xiphoid to the pubis and carried through to the fascia in a routine fashion. Upon entry a large amount of fluid and gas was encountered, this was suctioned out. The ulcer was almost immediately visualized and succus was pouring out so an NGT was placed with suctioning of 500 ml of clear yellow fluid. The ulcer was packed with a lap and the remaining abdomen explored and no other abnormalities noted. There was a large amount of fibrinopurulent debris below the diaphragm bilaterally and in the pelvis.

Patient B's Operative Note 6 Jun 2023, by Dr. VanDerHeyden.

121. Patient B was on a full liquid diet until 5 Jun 2023. Patient B was ordered Nil Per Os (NPO) on 5 Jun 2023. Thus, the only oral intake Patient B had prior to surgery was a full liquid diet. It is likely that the fluid encountered upon entering Patient B's abdomen was fluid from his full liquid diet. Dr. VanDerHeyden did not document finding GoLytely in Patient B's abdomen.

Jeremy Conklin
1414 10th Ave, Apt 734E
Seattle, Washington 98122
(570) 764-0102
jhconklin@icloud.com

1    The OMB was aware of this fact and neglected to consider these facts to

2    intentionally injury Plaintiff.

3    122. On 5 Jun 2023, Plaintiff had 4 patients that required emergency surgery.

4    Plaintiff attempted to schedule all 4 patients for surgery on 5 Jun 2023. The

5    operating room staff told Plaintiff that the operating room was full and that

6    there was room for only one of Plaintiff's 4 emergency surgery cases. The

7    operating room staff told Plaintiff that Plaintiff's other cases would have to wait

8    until 6 Jun 2023.

9    123. Plaintiff contacted Dr. Patrick O'Herron. Dr. O'Herron was a full time surgeon

10    at Salem Hospital who gave Plaintiff his phone number and advised Plaintiff to

11    contact him if the Plaintiff had any issues or questions. Plaintiff contacted Dr.

12    O'Herron and advised Dr. O'Herron that Plaintiff had 4 patients requiring

13    emergency surgery, but the operating room only had capacity to perform 1 case.

14    124. Dr. O'Herron recommended performing one emergency surgery and

15    scheduling the 3 other emergency surgery cases for the morning of 6 Jun 2023.

16    (See Exhibit HH - Text messages with Dr. O'Herron).

17    125. Plaintiff scheduled Patient A for emergency surgery on 5 Jun 2023, and Patient

18    B, Patient C, and Patient D for 6 Jun 2023. Because Plaintiff could not take

19    Patient B to the operating room on 5 Jun 2023, Patient B's surgery was delayed

20    until 6 Jun 2023. The OMB was aware of this fact and neglected to consider

21    these facts to intentionally injury Plaintiff.

22    126. Patient B presented to Salem Hospital for shortness of breath. Patient B had

23    idiopathic lung fibrosis and required supplemental oxygen to maintain his

24    oxygen saturations. Patient B was being treated with high dose corticosteroids

25    for his idiopathic pulmonary fibrosis. Patient B was scheduled for a lung

26    biopsy on the morning of 5 Jun 2023. Prior to surgery Patient B developed

Jeremy Conklin
1414 10th Ave, Apt 734E
Seattle, Washington 98122
(570) 764-0102
jhconklin@icloud.com

1    severe abdominal pain. Patient B's surgery was cancelled, and Patient B's

2    physician, Dr. Webber, ordered a STAT computed tomography scan (CT scan)

3    of the abdomen and pelvis on 5 Jun 2023 around 0950 hrs. At 1100 hrs the CT

4    scan was completed. Dr. Webber never looked at the CT scan or contacted

5    radiology to review Patient B's CT scan, even though Dr. Webber ordered the

6    CT scan as STAT. At 2044 hrs on 5 Jun 2023, Dr. Webber learned the results of

7    Patient B's CT scan. Patient B's CT scan showed a perforated duodenal ulcer.

8    127. The standard of care for the treatment of a perforated duodenal ulcer is

9    immediate surgical repair. Because the operating room did not have capacity to

10   perform emergency surgery, Patient B had to wait until 6 Jun 2023 to receive

11   the surgery. Patient B had a perforated duodenal ulcer for over 24 hrs before he

12   underwent surgical repair. The mortality increases for patients with perforated

13   duodenal ulcers as the time to surgery increases.[1] Because Salem Hospital had

14   no operating room capacity for emergency cases on 5 Jun 2023, Patient B's

15   surgery was delayed until 6 Jun 2023. Patient B died on 26 Jun 2023, from

16   complications of his duodenal ulcer. The delay in surgery likely contributed to

17   Patient B's death. The OMB did not investigate the Anesthesiologist and

18   operating room staff who declined Patient B access to the operating room on 5

19   Jun 2023. The OMB did not investigate Salem Hospital's lack of operating

20   room resources on 5 Jun 2023, which contributed to Patient B's death. The

21   OMB did not investigate why Salem Hospital did not go on diversion if the

22   hospital could not offer emergency surgery on 5 Jun 2023. The OMB did not

23   refer the incident to the appropriate regulatory authority if the OMB did not

24   have jurisdiction to investigate Salem Hospital's lack of operating room

25

26
_____

[1] Buck, D. L., Vester-Andersen. M., & Møller, M. H. (2013). Surgical delay is a critical determinant of survival in perforated peptic ulcer. *Journal of British Surgery*, *100*(8), 1045-1049.

**Jeremy Conklin**
1414 10th Ave, Apt 734E
Seattle, Washington 98122
(570) 764-0102
jhconklin@icloud.com

COMPLAINT FOR DAMAGES – 21

1

2
resources. The OMB was aware of these facts and neglected to consider these facts to intentionally injury Plaintiff.

3

4

5

6

7
128. Patient B was on high dose corticosteroids to treat his idiopathic pulmonary fibrosis. Corticosteroids inhibit healing of wounds, specifically corticosteroids inhibit the healing of bowel anastomosis. Dr. VanDerHeyden operated on Patient B and repaired his perforated duodenal ulcer , which is bowel surgery. Dr. VanDerHeyden continued Patient B's high dose steroids.

8

9

10

11

12

13
129. High dose Vitamin A is given to patients on corticosteroids who have undergone bowel surgery to aid in bowel healing by counteracting the anti-inflammatory effects of corticosteroids. A study in The American Journal of Surgery found that Vitamin A prevented intestinal dehiscence in patients on corticosteroids who underwent intestinal anastomosis.[2] Dr. VanDerHeyden never ordered high dose Vitamin A for Patient B.

14

15

16

17
130. Patient B was discharged from Salem Hospital after repair of his perforated duodenal ulcer on 16 Jun 2023. Patient B returned to the Salem Hospital on 24 Jun 2023, with hypotension and tachycardia. A CT scan showed Patient B to have a perforated duodenal ulcer.

18

19

20

21

22

23

24
131. On 24 Jun 2023, Patient B underwent esophagogastroduodenoscopy (EGD). The EGD showed "In the proximal duodenal bulb large deep ulcer with exposed sutures indicating that this was a prior perforated ulcer that was surgically repaired 6/6/23. It appears that the sutures and connection have come undone but there was not an obvious perforation." It was later determined that there was a perforation, which occurred due to dehiscence of the omental patch, Dr. VanDerHeyden placed. Because Patient B was on corticosteroids and

25

26
[2] Phillips, J. D., Kim, C. S., Fonkalsrud, E. W., Zeng, H., & Dindar, H. (1992). Effects of chronic corticosteroids and vitamin A on the healing of intestinal anastomoses. *The American journal of surgery*, *163*(1), 71-77.

Jeremy Conklin
1414 10th Ave, Apt 734E
Seattle, Washington 98122
(570) 764-0102
jhconklin@icloud.com

1    because Patient B did not receive Vitamin A to assuage dehiscence, Patient B's

2    prior omental patch underwent dehiscence.

3    132. Patient B expired on 26 Jun 2023 due to sepsis from his perforated duodenal

4    ulcer.  The delay in surgical treatment on 5 Jun 2023, and Patient B not being

5    administered Vitamin A to counteract the effects of his corticosteroids upon

6    intestinal healing contributed to the death of Patient B.

7    133. OMB has not investigated the delay of Patient B's surgical treatment on 5 Jun

8    2023.  OMB has not investigated why Dr. VanDerHeyden did not administer

9    Vitamin A.  The OMB was aware of all of these facts, yet neglected to consider

10    these facts to intentionally injury Plaintiff.

11    134. OMB alleges Plaintiff delayed the care of Patient C and mismanaged the

12    treatment of the patient with respect to prior surgery and electrolyte

13    abnormalities.  Patient C had a surgical abdomen because Patient C had

14    ischemic bowel, which was leaking potassium from dead cells.  Patient C had a

15    hernia, which was strangulating Patient C's bowel, preventing blood flow into

16    the bowel, which resulted in bowel death.

17    135. Plaintiff quickly saw Patient C in the Emergency Room at the request of the

18    Emergency Room physician.  Plaintiff determined Patient C required

19    emergency surgery to remove Patient C's dead bowel, thereby removing the

20    cause of Patient C's hyperkalemia.

21    136. Plaintiff was prevented from taking Patient C to the OR exigently because the

22    OR had no available rooms or staff to perform an emergent operation.  The

23    standard of care for the treatment of ischemic bowel, which is causing acidosis,

24    hyperkalemia, and sepsis, is to expeditiously remove the ischemic bowel.

25    Removal of ischemic bowel requires emergency surgery.  The only way for

26    Plaintiff to effectively address Patient C's acidosis, hyperkalemia, instability,

COMPLAINT FOR DAMAGES – 23

**Jeremy Conklin**
1414 10th Ave, Apt 734E
Seattle, Washington 98122
(570) 764-0102
jhconklin@icloud.com

1     hernia, and sepsis was for the Plaintiff to take Patient C to the OR for

2     emergency surgery.

3     137. As previously stated, the Plaintiff was prevented from taking Patient C to the

4     OR expeditiously and providing the standard of care, which was immediate

5     surgery to remove Patient C's dead bowel.

6     138. OMB alleges that Plaintiff provided Patient D with deep venous prophylaxis of

7     heparin prior to Patient D's surgery, which was a laparoscopic appendectomy.

8     Because Plaintiff ordered Patient D DVT prophylaxis, Plaintiff placed Patient D

9     at risk of bleeding.

10    139. Patient D was a 28 yo female on oral contraception of Yaz, who had a BMI of

11    34.5, and would be undergoing surgery with decreased mobility for the next

12    few days. (See Exhibit UU - MAR for Patient D and Exhibit VV - Vital Signs.)

13    **drospirenone-ethinyl estradiol (YAZ) 3-0.02 MG Oral Tablet** *[reconciled by Borden, Kary L, CPhT on 6/6/2023 0745]*
       Instructions: **Take 1 tablet** by mouth daily .
14     Entered by: Borden, Kary L, CPhT                    Entered on: 6/6/2023
       Start date: 5/12/2023

15

16    Patient D's medical record from 6 Jun 2023.

17    **Last Recorded Vitals**
      Blood pressure (!) 128/90, pulse (!) 91, temperature 98.9 °F (37.2 °C), resp. rate 18, height 5' 4.5" (1.638 m), weight 204 lb (92.5
      kg), SpO2 99 %.Body mass index is 34.48 kg/m².

18

19    Patient D's Vital Signs from 5 Jun 2023.

20    140. Patient D's Padua Prediction Score for Risk of Venous Thromboembolism was

21    7. A Padua score of 7 indicates a high risk of venous thromboembolism and

22    pharmacologic prophylaxis was indicated.

23    141. Patient D did not receive heparin prior to surgery. The heparin that was

24    ordered was held for the patient's surgery. (See Exhibit WW - MAR Patient D.)

25

26

COMPLAINT FOR DAMAGES – 24

Jeremy Conklin
1414 10th Ave, Apt 734E
Seattle, Washington 98122
(570) 764-0102
jhconklin@icloud.com

1

2

3  Performed 06/06/23    Held         0 Units              Subcutaneous           Performed by: Yonally, Lucie, RN
   0845              Held for                         —
   Documented:        procedure
4  06/06/23 1033

5

Patient D's Medical Administration Record (MAR) for Heparin 6 Jun 2023.

6

7        142. If Patient D received heparin DVT prophylaxis prior to surgery, and Patient D

8              was at high risk of bleeding as OMB alleges, why did not the surgeon who

9              operated on Patient D order a type and screen for blood?  OMB chastised

10             Plaintiff for not ordering a type and screen for Patient A, who was at high risk

11             of bleeding during surgery, yet OMB did nothing to Patient D's surgeon who

12             did not order a type and screen, when OMB alleges Patient D was at high risk

               of bleeding.

13       143. OMB alleges that Plaintiff did not consent Patient A for blood transfusion prior

14             to surgery.  OMB alleges that Plaintiff did not have the skills to perform Patient

15             A's inguinal hernia repair.  OMB alleges that Plaintiff ordered and administered

16             Golytely to Patient B prior to Patient B's surgery.  OMB alleges that the

17             surgeon who performed Patient B's surgery found Golytely inside Patient B's

18             abdomen.  OMB alleges that Plaintiff delayed taking Patient B to the OR.

19             OMB alleges that Plaintiff mismanaged Patient C's treatment and did not

20             address Patient C's acidosis, hyperkalemia, or sepsis.  OMB further alleges

21             Plaintiff delayed operating on Patient C.  Finally, OMB alleges that Plaintiff

22             ordered DVT prophylaxis for Patient D, who did not need DVT prophylaxis,

23             and that Plaintiff administered DVT prophylaxis prior to Patient D's surgery,

24             which placed Patient D at risk of bleeding.

25       144. The facts from the medical record show Patient A was consented for blood

26             transfusion.  Dr. Allison harassed Plaintiff and forced Plaintiff to abandon

COMPLAINT FOR DAMAGES – 25

Jeremy Conklin
1414 10th Ave, Apt 734E
Seattle, Washington 98122
(570) 764-0102
jhconklin@icloud.com

1

2

3

4

5

6

7

8

9

Patient A. The medical records show Plaintiff did not order Golytely for
Patient B, and that Patient B received no Golytely prior to surgery. The medical
records show that no Golytely was found in Patient B's abdomen. The facts
show that Plaintiff could not effectively manage Patient C's medical condition
because the treatment for Patient C's medical problems were exigent surgery,
and Plaintiff was prevented from taking Patient C to the OR expeditiously.
Finally, the facts show Patient D was at high risk for DVT and required
pharmacologic DVT prophylaxis. Additionally, the medical record shows
Patient D did not received DVT prophylaxis prior to surgery.

10

11

12

13

14

15

16

17

18

19

145.In OMB's Notice of Proposed Disciplinary Action, the OMB continuously
alleges "A reasonably prudent, careful, and skilled surgeon…" In tort law the
standard for negligence is when actions of one person are determined to fall
below standard of what a "reasonably prudent person" would do. That is not
the case for medicine. In medicine negligence is determined when the actions
of a physician fall below the standard of care. Therefore, a physician's actions
are compared to the standard of care and not a "reasonably prudent, careful, and
skilled surgeon." In order, to show that a physician's action fell below the
standard of care, the OMB has to show exactly what the standard of care was,
and how the Plaintiff's actions did not comport with the standard of care.

20

21

22

23

24

146.Applying the "reasonably prudent, careful and skilled surgeon" standard is the
incorrect standard. The OMB must show how the Plaintiff did not meet the
standard of care. Because the OMB has not shown any violation of the
standard of care in its Notice of Proposed Disciplinary Action, the entire Notice
of Proposed Disciplinary action must be declared void with no legal effect.

25

26

COMPLAINT FOR DAMAGES – 26

**Jeremy Conklin**
1414 10th Ave, Apt 734E
Seattle, Washington 98122
(570) 764-0102
jhconklin@icloud.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

147. The OMB submitted false allegations in a Notice of Proposed Disciplinary Action to injure Plaintiff. Submitting false allegations is a violation of Plaintiff's Constitutional 14th Amendment protection of Due Process.

148. The State cannot manufacture allegations and submit the manufactured allegations for adjudication. Complaints by the state alleging violation of laws by citizens shall not be presented for an improper purpose. The claims and legal contentions must warranted with factual contentions, which have evidentiary support, and that denials of factual contentions are warranted. The OMB's Notice of Proposed Disciplinary Action does not contain legally warranted contentions. The allegations in the Notice of Proposed Disciplinary Action do not have evidentiary support, and the allegations are being presented for an improper purpose.

149. The OMB's Notice of Proposed Disciplinary Action also violates ORS 31.230 – Wrongful Use of Civil Proceeding. The OMB's Notice of Proposed Disciplinary Action is extortion. The OMB manufactured false allegations, filed the false allegations, and then offered to enter settlement with the Plaintiff for $10,000 to settle the false allegations.

150. Extortion is the practice of obtaining benefits, usually pecuniary, through coercion. The OMB manufactured false allegations against Plaintiff and threatened to revoke Plaintiff's medical license. The OMB offered to settle the manufactured allegations against Plaintiff, if Plaintiff agreed to pay $10,000 to OMB. The OMB threatened Plaintiff with false allegations and coercion, for the benefit of obtaining $10,000. This is Wrongful Use of a Civil Proceeding.

151. The OMB's Notice of Proposed Disciplinary Action is arbitrary and capricious. The OMB used the wrong standard to allege the Plaintiff injured patients. The OMB did not judge the Plaintiff's actions against the standard of care. Instead,

COMPLAINT FOR DAMAGES – 27

Jeremy Conklin
1414 10th Ave, Apt 734E
Seattle, Washington 98122
(570) 764-0102
jhconklin@icloud.com

the OMB judged the Plaintiff's actions against a "reasonably prudent, careful, and skilled surgeon", who the OMB employed and whose salary is predicated on doing what the OMB orders. The OMB only judged the Plaintiff's actions and did not look at the actions of other physicians treating Patients A, B, C, and D. Using the OMB's own logic, physicians treating Patients A, B, C, and D, did not act as a "reasonably prudent, careful, and skilled surgeon." Yet, the OMB took no disciplinary actions against any of the other physicians treating Patient A, B, C, or D. Physicians are a group of individuals for which the OMB issues licenses to practice medicine. The OMB treated the Plaintiff differently than other similarly situated physicians.

152. The OMB's disparate treatment of the Plaintiff, compared to other physicians treating Patients A, B, C, and D, violated Plaintiff's Constitutional 14th Amendment right of Equal Protection of the laws.

153. Violation of Plaintiff's U.S. Constitution 14th Amendment Right of Equal Protection violates 42 U.S.C. § 1983.

154. *Monroe v. Pape*, 365 U.S. 167 (1961) held that state officers who violated Plaintiff's Constitutional Rights can be sued under 42 U.S.C. § 1983.

155. Because of OMB's violation of 42 U.S.C. § 1983, Plaintiff has been damaged in an amount to be proven at trial.

*Violation of 42 U.S.C. § 1983 – Violation of U.S. Constitution 14th Amendment Due Process. Offered to show motive, opportunity, intent, plan, absence of mistake, and lack of accident.*

*(Against OMB and Ms. Nicole Krishnaswami)*

156. Plaintiff re-alleges the facts as set forth in paragraphs 1-51 of his Complaint as though fully set forth herein.

157. On 5 Sept 2018, Plaintiff received a Notice of Civil Penalty from the OMB.

Jeremy Conklin
1414 10th Ave, Apt 734E
Seattle, Washington 98122
(570) 764-0102
jhconklin@icloud.com

158. The Notice of Civil Penalty was issued because the Plaintiff answered a question on the OMB Application for Medical Licensure incorrectly.

159. The OMB alleged that Plaintiff violated OAR 847-008-0058, Fraud or Misrepresentation Regulations.

160. Black's Law Dictionary defines Fraud as deceit in transactions, perjury during a trial, forgery, or bribing a witness.

161. Black's Law Dictionary defines Misrepresentation as fraudulent artifice, or device used by one or more persons to deceive or trick another.

162. Black's Law Dictionary defines Mistake as an unintentional act, omission, or error arising from ignorance, surprise, imposition, or misplaced confidence.

163. Both Fraud and Misrepresentation require criminal intent to complete the act.

164. OAR 847-008-0058 proscribes Fraud or Misrepresentation.

165. OAR 847-008-0058 does not proscribe Mistake.

166. OMB found Plaintiff violated OAR 847-008-0058 without showing that Plaintiff intended to commit fraud or misrepresentation.

167. Plaintiff made a mistake when completing the Oregon Application for Medical License.

168. In its response to Plaintiff's motion to dismiss civil penalty, on 12 Sept 2018 the OMB stated, "As it stands, the Board has received information that you answered the application question incorrectly." The OMB admitted that Plaintiff made a mistake by incorrectly answering an application question.

169. OMB admits Plaintiff made a mistake on his application, but fined Plaintiff for Fraud or Misrepresentation without proving Plaintiff intended to commit Fraud or Misrepresentation.

170. OMB failed to show Plaintiff had the requisite Mens Rea for violation of OAR 847-008-0058.

Jeremy Conklin
1414 10th Ave, Apt 734E
Seattle, Washington 98122
(570) 764-0102
jhconklin@icloud.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

171.Intent is an element of Fraud or Misrepresentation.

172.OMB fined the Plaintiff $195.00 for committing Fraud or Misrepresentation when completing his application for Oregon Medical License.

173.Furthermore, the OMB stated, "Should the outcome of the hearing not be found in your favor, you may be responsible for the cost of the hearing, including the civil penalty."

174.Had the Plaintiff requested a hearing with the State of Oregon, an administrative law judge would be the tribunal. The administrative law judge is under the executive branch and not the judicial branch.

175.If the Plaintiff was found culpable by the tribunal, the Plaintiff would be responsible for the cost of the hearing and required to pay the Executive Branch of the State of Oregon the cost of the hearing and civil fine.

176.Under that rubric, the State of Oregon, executive branch, makes money when the Plaintiff loses.

177.How is the tribunal unbiased if the tribunal, a member of the Executive Branch, receives renumeration when the Plaintiff loses?

178.There would be a financial incentive for administrative law judges, in the Executive, to rule in favor of the State of Oregon, so Plaintiffs would have to pay for appeals hearings.

179.This would be a violation of the Due Process Clause of the U.S. Constitution's 14th Amendment.

180.Violation of Plaintiff's U.S. Constitution 14th Amendment Right of Due Process violates 42 U.S.C. § 1983.

181.*Monroe v. Pape*, 365 U.S. 167 (1961) held that state officers who violated Plaintiff's Constitutional Rights can be sued under 42 U.S.C. § 1983.

COMPLAINT FOR DAMAGES – 30

Jeremy Conklin
1414 10th Ave, Apt 734E
Seattle, Washington 98122
(570) 764-0102
jhconklin@icloud.com

182.Plaintiff admits that the OMB's Notice of Civil Penalty incident occurred in 2018, so the statute of limitations regarding the Notice of Civil Penalty violating the Plaintiff's Civil Rights tolled.  Plaintiff includes the Notice of Civil Penalty in his Complaint to show that the case relates to the OMB's actions of manufacturing allegations for pecuniary gain.  The Notice of Civil Penalty allegation is included to show motive, opportunity, intent, plan, absence of mistake, and lack of accident.  The OMB intentionally alleges physicians violate Oregon Revised Statutes for the purpose of fining physicians in order to make money.

183.OMB and Ms. Nicole Krishnaswami are jointly and severally responsible for OMB's actions

184.The Court should issue a declaratory judgment declaring that Defendant's action constitutes illegal violations of 42 U.S.C. § 1983.

185.The Court should also issue a permanent injunction appointing a Special Master to observe all OMB investigations and punitive actions for 5 years, funded by the OMB.  The Special Master will ensure the OMB is providing due process in all investigative and punitive actions.

186.The Court should issue a Writ of Mandamus directing the U.S. Department of Justice Public Integrity Unit to investigate the actions of the OMB. Issuing fines to applicants through artifice of manufactured violations for the purpose of increasing the OMB's revenue is unethical, illegal, and possibly violates 18 U.S.C. §1963 Racketeer Influenced and Corrupt Organizations.

*Fourth Cause of Action:*

*Violation of 42 U.S.C. § 1983 – Violation of U.S. Constitution 14th Amendment Due Process, Retaliation – (Against All Defendants)*

COMPLAINT FOR DAMAGES – 31

Jeremy Conklin
1414 10th Ave, Apt 734E
Seattle, Washington 98122
(570) 764-0102
jhconklin@icloud.com

187. Plaintiff re-alleges the facts as set forth in paragraphs 1-51 of his Complaint as though fully set forth herein.

188. For retaliation, the evidence must show that Plaintiff engaged in protected activity of which the OMB was aware.

189. The evidence must show the OMB took a significant adverse action against the Plaintiff.

190. The evidence must show a causal connection exists between the Plaintiff's protected activity and the OMB's adverse action.

191. Plaintiff informed OMB that the OMB was violating the Plaintiff's U.S. Constitutional right of Due Process. See Exhibit NN (E-mail to Walter Fraiser).

192. Without interviewing the Plaintiff, or completing its investigation, the OMB ordered Plaintiff to undergo Competence Evaluation and Acumen Assessments.

193. The Plaintiff was responsible for the costs of both the Competency Evaluation and Acumen Assessment, which would cost over $10,000.00.

194. The OMB ordered both Competency Evaluation and Acumen Assessment in response to Plaintiff complaining that the OMB was violating the Plaintiff's U.S. Constitutional 14th Amendment Right of Due Process.

195. OMB's retaliation against Plaintiff violates Plaintiff's Constitutional 14th Amendment Right of Due Process 42 U.S.C §1983.

196. *Monroe v. Pape*, 365 U.S. 167 (1961) held that state officers who violated Plaintiff's Constitutional Rights can be sued under 42 U.S.C. § 1983.

197. Because of OMB's violation of 42 U.S.C. § 1983, Plaintiff has been damaged in an amount to be proven at trial.

198. Each of the Defendants is jointly and severally liable for Plaintiff's damages.

199. The Court should issue a declaratory judgment finding that Defendant's action constitutes violations of 42 U.S.C. § 1983.

COMPLAINT FOR DAMAGES – 32

Jeremy Conklin
1414 10th Ave, Apt 734E
Seattle, Washington 98122
(570) 764-0102
jhconklin@icloud.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

200. The Court should issue a preliminary injunction preventing the OMB's investigation into Plaintiff from progressing until the instant case has been adjudicated.

201. The Court should also issue a permanent injunction appointing a Special Master to observe all OMB investigations and punitive actions for 5 years, funded by the OMB. The Special Master will ensure the OMB is providing due process in all investigative and punitive actions.

### Fifth Cause of Action:
### Intentional Infliction of Emotional Distress
### (Against All Defendants)

202. Plaintiff re-alleges the facts as set forth in paragraphs 1-51 of his Complaint as though fully set forth herein.

203. Defendants engaged in extreme and outrageous conduct by violating Plaintiff's U.S. Constitutional Rights.

204. Defendants were aware of Plaintiff's U.S. Constitutional Rights, and they intentionally violated them, and retaliated against the Plaintiff for attempting to assert his U.S. Constitutional Rights.

205. Defendants have engaged in bad faith and have conspired against Plaintiff with the purpose of excluding him from practicing in his chosen career.

206. Defendants' conduct has caused Plaintiff extreme emotional distress, and he has been damaged in an amount to be proven at trial.

207. Defendants are jointly and severally liable for the damages Plaintiff has suffered because of their intentional infliction of emotional distress.

### Sixth Cause of Action:
### Negligent Infliction of Emotional Distress

COMPLAINT FOR DAMAGES – 33

Jeremy Conklin
1414 10th Ave, Apt 734E
Seattle, Washington 98122
(570) 764-0102
jhconklin@icloud.com

1

*(Against All Defendants)*

2    208.Plaintiff re-alleges the facts as set forth in paragraphs 1-51 of his Complaint as

3        though fully set forth herein.

4    209.Defendants engaged in conduct they knew or should have known would

5    cause Plaintiff distress when they violated his U.S. Constitutional Rights, retaliated against

6    him, and conspired to exclude him from practicing medicine in the State of Oregon.

7    210.Defendants were aware of Plaintiff's claims when he made Walter Fraiser

8        aware in an e-mail sent to Mr. Fraiser on 4 Oct 2023.

9    211.Defendants have engaged in bad faith and have conspired against Plaintiff with

10       the purpose of excluding him from practicing in his chosen career.

11   212.Defendants' actions caused Plaintiff extreme emotional distress, and he has

12       been damaged in an amount to be proven at trial.

13   213.Defendants are jointly and severally liable for all the damages Plaintiff has

14       suffered because of their negligent infliction of emotional distress.

15

16       ***Sixth Cause of Action:  Declaratory Judgment***

17            ***29 U.S.C. §§2201-2202; FRCP 57***

18                 *(Against All Defendants)*

19   214.Plaintiff re-alleges the facts as set forth in paragraphs 1-51 of his Complaint as

20       though fully set forth herein.

21   215.The Declaratory Judgment Act and FRCP 57 provide a remedy for ongoing

22       statutory violations.

23   216.Declaratory Judgement that OMB has discriminated against Plaintiff and

24       violated 42 U.S.C §1983.

25

26

COMPLAINT FOR DAMAGES – 34

**Jeremy Conklin**
1414 10th Ave, Apt 734E
Seattle, Washington 98122
(570) 764-0102
jhconklin@icloud.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

217. Declaratory Judgement that Defendants have engaged in retaliation to jointly thwart efforts by Plaintiff to request due process with respect to investigations and punitive actions against him by defendants.

218. Declaratory judgement that it is unlawful for Defendants to violate the U.S. Constitutional Rights of applicants to the OMB and licensees of the OMB.

219. The Court should also declare that OMB must issue the same medical licenses it issues to physicians who are residents of Oregon to physicians who are residents of other states.

220. Additionally, the Court should declare that the OMB cannot recoup costs for hearings, which applicants and licensees request, for adjudication of punitive actions brought by the OMB.

*Seventh Cause of Action: Injunctive Relief*

*FRCP 65*

*(Against All Defendants)*

221. Plaintiff re-alleges the facts as set forth in paragraphs 1-51 of his Complaint as though fully set forth herein.

222. The Court should issue a temporary restraining order, while hearing for preliminary injunction is scheduled, to halt investigation into the complaint against Plaintiff by the Defendants, until Plaintiff's case has been fully adjudicated by the Court.

223. The Court should issue a temporary restraining order, while hearing for preliminary injunction is scheduled, to re-activate Plaintiff's Oregon Medical License.

224. The Court should appoint a Special Master to monitor the OMB.

225. The Special Master would be in place for a minimum of five years.

226. The Special Master shall be paid for by the OMB.

COMPLAINT FOR DAMAGES – 35

**Jeremy Conklin**
1414 10th Ave, Apt 734E
Seattle, Washington 98122
(570) 764-0102
jhconklin@icloud.com

227. The Special Master shall oversee all investigations and punitive actions by the OMB.

228. The Special Master shall ensure that the OMB is affording Due Process and Equal Protection of the laws for individuals being investigated or receiving punitive action by the OMB.

229. The Special Master shall ensure that the OMB is not retaliating against applicants or licensees who bring forth concerns of due process or equal protection.

230. The Special Master shall have the power to overturn OMB decisions that violate due process, violate equal protection of the laws, or are retaliatory.

231. The Special Master shall have the ability to levy pecuniary penalties against the OMB for violations of due process, violations of equal protection of the laws, or retaliatory actions.

## JURY TRIAL DEMAND

298.    Pursuant to Fed. R. Civ. Pro. 38(b), Plaintiff demands a jury trial.

## PRAYER FOR RELIEF

Having plead his claims under federal law, Plaintiff prays for the following relief:

1.   An award of monetary damages, compensatory damages, and punitive damages, for violation of Plaintiff's U.S. Constitutional Rights against all Defendants, jointly and severally, and in favor of Plaintiff in an amount to be proven at trial.

2.   An award of monetary damages, compensatory damages, and punitive damages, for retaliation against all Defendants, jointly and severally, and in favor of Plaintiff in an amount to be proven at trial.

COMPLAINT FOR DAMAGES – 36

Jeremy Conklin
1414 10th Ave, Apt 734E
Seattle, Washington 98122
(570) 764-0102
jhconklin@icloud.com

3. An award of monetary damages, compensatory damages, and punitive damages, for Wrongful Use of Civil Proceeding against all Defendants, jointly and severally, and in favor of Plaintiff in an amount to be proven at trial.

4. An award of monetary damages for intentional and/or negligent infliction of emotional distress against all Defendants, jointly and severally, and in favor of Plaintiff in an amount to be proven at trial.

5. An injunction prohibiting OMB from any further violation of applicants' or licensees' U.S. Constitutional Rights, and a Special Master appointed to oversee that OMB is respecting applicants' and licensees' U.S. Constitutional Rights.

6. An injunction prohibiting the OMB from collecting hearing costs from any applicant or licensee that chooses to have a hearing regarding punitive actions against them taken by the OMB.

7. An injunction requiring OMB to issue the same Oregon Medical License to out of state residents as the OMB issues to Oregon residents.

8. A preliminary injunction restraining Defendants from pursuing the current investigation into Plaintiff until the instant case has fully adjudicated.

9. A Writ of Mandamus directing the U.S. Department of Justice, Public Integrity Division, to investigate Defendants to determine if OMB fined applicants for mistakes on OMB applications for licensure solely to increase OMB revenue.

10. A Writ of Mandamus directing the Oregon State Bar to investigate Ms. Nicole Krishnaswami, JD, for unethical conduct and violation of her Oregon State Bar oath to uphold and defend the U.S. Constitution, when Ms. Krishnaswami submitted false allegations regarding Plaintiff in the OMB's Notice of Proposed Disciplinary Action. Ms. Krishnaswami violated her Oregon State Bar Oath when she condoned the OMB's practice of violating Applicants and Licenses' U.S. Constitutional Rights.

**Jeremy Conklin**
1414 10th Ave, Apt 734E
Seattle, Washington 98122
(570) 764-0102
jhconklin@icloud.com

1

11. Declaratory Judgment that Defendants have been violating the U.S.

2

Constitutional Rights of OMB applicants and licensees.

3

12. Declaratory Judgment that it is unlawful and discriminatory for Defendants to

4

retaliate against applicants or licensees who uphold their U.S. Constitutional

5

Rights.

6

13. An award of attorney's fees and costs; and

7

14. Such other relief as available under the statutes and/or the Court deems just

8

and equitable.

9

10

11

DATED THIS 25th DAY OF JUNE 2025.

12

13

14

15

16

Dr. Jeremy Conklin, D.O., J.D

17

*Attorney for Plaintiff,*

18

*Dr. Jeremy Conklin, D.O.*

19

20

/s/Jeremy Conklin

21

Jeremy Conklin, WSBA No. 59956

22

1414 10th Ave, Apt 734E

23

Seattle, WA 98122

24

Phone: (570) 764-0102

25

Email: jhconklin@icloud.com

26

COMPLAINT FOR DAMAGES – 38

1

2  **CERTIFICATE OF SERVICE**

3        I hereby certify that on the date below, I caused the foregoing document to be filed

4  using CM/ECF, which will transmit the same to all counsel of record. Any parties not

5  served via CM/ECF will be served in accordance with the Federal Rules of Civil

6  Procedure.

7

8  DATED: Jun 25, 2025

By /s/ Jeremy Conklin

9

Jeremy Conklin, WSBA #59956

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

COMPLAINT FOR DAMAGES – 39

**Jeremy Conklin**
1414 10th Ave, Apt 734E
Seattle, Washington 98122
(570) 764-0102
jhconklin@icloud.com

1
2                                    **Exhibit AA**
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

COMPLAINT FOR DAMAGES – 40

Jeremy Conklin
1414 10th Ave, Apt 734E
Seattle, Washington 98122
(570) 764-0102
jhconklin@icloud.com