# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JEREMY CONKLIN, D.O.**, an individual, | Case No. 3:25-cv-01173-AR |
| Plaintiff, | **OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUCTION** |
| v. | |
| **OREGON MEDICAL BOARD**, an Oregon State Agency; **NICOLE KRISHNASWAMI,** an individual; **MICHAEL SEIDEL**, an individual; and **WALTER FRASIER**, an individual, | |
| Defendants. | |

Jeremy Conklin, D.O., 1414 10th Ave., Apt. 734E, Seattle, WA 98112. Pro se.

Marc Abrams, Oregon Department of Justice, 100 SW Market Street, Portland, OR 97201. Attorney for Defendants.

**IMMERGUT, District Judge.**

PAGE 1 – OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUCTION

Before this Court is pro se[1] Plaintiff Jeremy Conklin's Motion for Preliminary Injunction ("Mot."), ECF 2, under Federal Rule of Civil Procedure 65. Plaintiff alleges that the Oregon Medical Board ("OMB") discriminates against out-of-state physicians in violation of the Privileges and Immunities Clause and has instituted disciplinary procedures against him in violation of the Fourteenth Amendment's Due Process and Equal Protection Clauses. Mot., ECF 2 at 11. Plaintiff asks this Court to issue a preliminary injunction (i) prohibiting OMB from discriminating against out-of-state physicians, (ii) requiring OMB to issue the same medical license to both in-state and out-of-state physicians, (iii) staying OMB's disciplinary actions against Plaintiff, and (iv) reactivating Plaintiff's Oregon medical license. *Id.* at 11–12.

On August 27, 2025, this Court held a hearing on Plaintiff's Motion at which both sides had an opportunity to present additional evidence and argument. Based on the briefing, arguments by Plaintiff and counsel for Defendant, and the current record of the case, this Court DENIES Plaintiff's Motion for Preliminary Injunction. This Court finds that Plaintiff has not demonstrated that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, or that the balance of equities and public interest tip in favor of issuing the injunction. Even though this finding is based in part on Plaintiff's likelihood of success on the merits, this Court is not making a final determination about the underlying merits of any of Plaintiff's claims.

---

[1] Although Plaintiff appears pro se in this matter, he is an attorney admitted to the Washington State Bar. Reply, Ex. II, ECF 16 at 34.

## BACKGROUND

Plaintiff Jeremy Conklin ("Plaintiff") is an osteopathic physician and Washington resident who held an Oregon locum tenens medical license from 2018 to 2024.[2] Complaint ("Compl."), ECF 1 ¶¶ 15, 21, 23. Defendants are the Oregon Medical Board, its executive director Nicole Krishnaswami, and its investigators Michael Seidel and Walter Frasier. *Id.* ¶¶ 3–5. This action arises from Oregon's regulations for out-of-state medical licensing and OMB's disciplinary investigation and proceedings against Plaintiff.

Plaintiff applied for an Oregon medical license in July 2018. *Id.* ¶ 8. Plaintiff was told that he cannot qualify for an active Oregon medical license because he does not live or practice within 100 miles of the Oregon border.[3] *Id.* ¶ 10 (emphasis omitted). Plaintiff did, however, qualify for a locum tenens Oregon medical license, and OMB issued him one in October 2018. *Id.* ¶ 15. The locum tenens license allowed Plaintiff to practice medicine in Oregon for up to 240 days in a two-year period and required him to notify OMB in advance of the location and duration of each of his assignments in Oregon. *Id.*, Ex. AA, ECF 1-2 at 1 (OAR 847-008-0020). In 2019, Plaintiff asked OMB why he could not qualify for an active Oregon medical license. *Id.*, Ex. EE, ECF 1-2 at 23. OMB informed Plaintiff that physicians "who actively practice in

---

[2] Locum tenens licenses are issued to "[a]ny licensee whose official state of residence is a state other than Oregon who proposes to practice intermittently within the State." OAR 847-008-0020. A locum tenens licensee may practice for no more than 240 days within a two-year period and is required to notify OMB of "the location and duration of each Oregon practice prior to [the] beginning of such practice" *Id.* A locum tenens licensee who does not practice in Oregon during the two-year period "shall be registered as inactive at the time of registration renewal, and shall be required to reactivate to locum tenens registration status prior to practicing in Oregon." *Id.*

[3] Active medical licenses are issued to licensees "practic[ing] within the State of Oregon" or whose "practice address of record with the Board is within 100 miles of the border of the State of Oregon and who intend[] to practice within Oregon." OAR 847-008-0015.

Oregon, with a current Oregon practice address may register the active license at Active status. Physicians who do not live in Oregon, but who practice intermittently . . . may register the active license at Locum Tenens status, per Oregon Administrative Rule (OAR)." *Id.* at 22. Plaintiff maintained a locum tenens Oregon medical license through January 2024. *Id.*, Ex. GG, ECF 1-2 at 29.

The night of June 5 to June 6, 2023, Plaintiff saw five patients while working at Salem Hospital in Oregon. *Id.* ¶ 25. A month later, OMB notified Plaintiff that it received a complaint about his conduct at Salem Hospital during the June 5 to June 6, 2023 time period, and opened an investigation based on allegations of medically incompetent care and unprofessional and dishonorable conduct. *Id.*, Ex. JJ, ECF 1-2 at 43. On July 16, 2023, Plaintiff replied to OMB requesting additional detail about the allegations against him so that he could mount his defense. *Id.*, Ex. KK, ECF 1-2 at 49. After OMB provided specific allegations, Plaintiff submitted a detailed summary of his actions on December 6, 2024. Compl., ECF 1 ¶ 47.

Apart from OMB's disciplinary investigation into Plaintiff, on January 31, 2024, OMB notified Plaintiff that his locum tenens license status would change to inactive if he did not report any employment assignments in Oregon in the last two years. *Id.*, Ex. FF, ECF 1-2 at 26. OMB regulations mandate inactivating a locum tenens license if the licensee does not practice in Oregon within the past two years. *Id.*, Ex. AA, ECF 1-2 at 1. Plaintiff did not respond to OMB's notification. On February 8, 2024, Plaintiff's locum tenens medical license was changed to inactive status. *Id.*, Ex. GG, ECF 1-2 at 29.

On June 7, 2024, OMB ordered Plaintiff to undergo medical competency examinations pursuant to ORS 677.420 as part of the disciplinary investigation involving his conduct at Salem Hospital. Compl., Ex. MM, ECF 1-2 at 100–01. There is no evidence that Plaintiff underwent the

PAGE 4 – OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUCTION

ordered medical competency examinations or replied to the order. On September 5, 2024, OMB
requested that Plaintiff appear in person for an interview before the Investigative Committee on
December 5, 2024, in Portland. *Id.*, Ex. NN, ECF 1-2 at 109. Plaintiff requested a Zoom link for
the interview. *Id.* An OMB investigator responded that there is not a Zoom option and reiterated
the in-person interview date. *Id.* at 108. Plaintiff did not appear for the requested interview.

Six months later, on June 3, 2025, OMB sent Plaintiff a Notice of Proposed Disciplinary
Action ("Notice") for violations of the Medical Practice Act, including "unprofessional or
dishonorable conduct," the "inability to safely and skillfully practice medicine," "gross and
repeated negligence in the practice of medicine," "failure to comply with a board order" and
request, and "refusing an invitation for an informal interview." *Id.*, Ex. XX, ECF 1-2 at 141.
Plaintiff asserts that this Notice, signed by Defendant Krishnaswami, who purportedly holds a
law degree, contains false allegations. *Id.*, ECF 1 at 37. At the August 27, 2025 preliminary
injunction hearing before this Court, Plaintiff alleged that OMB later amended the Notice of
Proposed Disciplinary Action because on July 8, 2025, Plaintiff filed a complaint with the
Oregon State Bar against Ms. Krishnaswami. Plaintiff further alleged that those amendments
were backdated to June 26, 2025 and were unsigned because OMB and its employees are
attempting to avoid any accountability for the false allegations. Plaintiff did not include the
amended Notice of Proposed Disciplinary Action as an exhibit.

On July 15, 2025, OMB listed Plaintiff's name on their public website, stating that he
was issued a Notice of Proposed Disciplinary Action and that no final action has been taken.
Reply, ECF 16 at 2; *Id.*, Ex. I at 23–26. The same day, a recruiter notified Plaintiff that a
potential employer in Utah "may have questions" about the disciplinary action in Oregon before
proceeding with Plaintiff's application. *Id.*, Ex. IA at 28. Plaintiff alleges he was also unable to

accept a recent job offer in Oregon because his Oregon locum tenens medical license is currently inactive. *Id.* at 13; *id.*, Ex. VI at 78.

At the August 27, 2025 preliminary injunction hearing before this Court, Plaintiff stated that a prehearing conference on the amended Notice of Proposed Disciplinary Action is set with the Oregon Office of Administrative Hearings around September 27, 2025. To date, OMB has not taken any final disciplinary action against Plaintiff. Declaration of Nicole Krishnaswami, ECF 13 ¶ 2. Plaintiff filed his Complaint with this Court on July 7, 2025. Compl., ECF 1.

Plaintiff now brings seven causes of action, including claims pursuant to 28 U.S.C. § 1983 for alleged constitutional violations of due process, privileges and immunities, and equal protection, as well as various Oregon state law claims. Compl., ECF 1. Plaintiff's briefing on his Motion for a Preliminary Injunction invokes only his Section 1983 claims. Mot., ECF 2; Reply, ECF 16. Therefore, this Court evaluates only those federal claims for the purposes of Plaintiff's Motion for Preliminary Injunction.

## STANDARDS

"A preliminary injunction is an extraordinary remedy that may be awarded only if the plaintiff clearly shows entitlement to such relief." *Am. Beverage Ass'n v. City & Cnty. of San Francisco*, 916 F.3d 749, 754 (9th Cir. 2019) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). A plaintiff seeking a preliminary injunction must show that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20. Plaintiff bears the burden of demonstrating that he meets all four of the *Winter* factors. *DISH Network Corp. v. F.C.C.*, 653 F.3d 771, 776 (9th Cir. 2011).

**DISCUSSION**

As explained in this opinion, this Court finds that Plaintiff has failed to establish that he is likely to succeed on the merits of his Section 1983 due process, privileges and immunities, or equal protection claims. Plaintiff also has not shown that he is likely to suffer irreparable harm or that the balance of equities and public interest tip in favor of issuing a preliminary injunction.

**A. Likelihood of Success on the Merits**

Plaintiff has not shown that he is likely to succeed on the merits for three reasons. First, Defendants are likely immune to most, if not all, of Plaintiff's claims. Second, Plaintiff's request for this Court to stay OMB's disciplinary proceedings against him likely warrants abstention under *Younger v Harris*, 401 U.S. 37 (1971). Third, putting those issues aside, Plaintiff still has not demonstrated a likelihood of success on the merits for his Section 1983 privileges and immunities, due process, or equal protection claims.

Most, if not all, of Plaintiff's claims against Defendants are likely barred by sovereign, judicial, or qualified immunity. OMB has sovereign immunity under the Eleventh Amendment as a "state agency," so it cannot be sued for injunctive relief or damages under Section 1983. *Bondick v. Mitchell Sanchez*, No. 6:22-CV-00722-AA, 2023 WL 1103615, at *2 (D. Or. Jan. 30, 2023) ("Plaintiff cannot sue the State of Oregon or any of its agencies, including the Oregon Medical Board, in this court." (citation omitted));[4] *Munoz v. Super. Ct. of L. A. Cnty.*, 91 F.4th 977, 980 (9th Cir. 2024) (denying prospective injunctive relief against the superior court as a state agency). The individual defendants may have absolute judicial immunity for damages and

---

[4] This Court nonetheless addresses Plaintiff's claims against OMB to demonstrate that Plaintiff's claims are unlikely to succeed even if he amended his complaint to name OMB members in place of OMB itself.

may not be subject to an injunction under Section 1983. *LaTulippe v. Harder*, 574 F. Supp. 3d 870, 884 (D. Or. 2021).[5] Even if the individual defendants do not have absolute immunity for either damages or injunctive relief, they are likely entitled to qualified immunity for any damages claims against them in their individual capacity. *LaTulippe v. Or. Med. Bd.*, 2025 WL 1692418 (D. Or. Jun. 16, 2025) (holding that OMB staff that engaged in investigative functions were entitled to qualified immunity).

Plaintiff's request to stay the state disciplinary proceedings against him may warrant this Court's mandatory abstention under *Younger v Harris*, 401 U.S. 37 (1971). *Younger* abstention may be warranted on a fuller record if Plaintiff is involved in an ongoing state proceeding that implicates important state interests and provides an adequate opportunity to raise federal questions. *See Buckwalter v. Nev. Bd. of Med. Exam'rs*, 678 F.3d 737, 747 (9th Cir. 2012), as amended (June 8, 2012) (abstaining from physician's due process claim against medical board during his disciplinary proceedings). Although this Court may raise abstention sua sponte and dismiss claims for injunctive relief on that basis, *H.C. ex rel. Gordon v. Koppel*, 203 F.3d 610, 613 (9th Cir. 2000), this Court declines to do so on a preliminary record. Abstention is not jurisdictional and may be waived by the State. *See Ohio C.R. Comm'n v. Dayton Christian Sch.,*

---

[5] In *LaTulippe v. Harder*, the court found that OMB members had absolute judicial immunity from the plaintiff's money damages claims. 574 F. Supp. 3d at 883. Further, OMB members could not be sued for injunctive relief under Section 1983. *Id.* at 883–84. Section 1983 provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. The court in *LaTulippe* found that the plaintiff's claim did not fall within this "narrow set of circumstances" because he did not allege that defendants violated a declaratory decree or that declaratory relief was unavailable. 574 F. Supp. 3d at 884.

*Inc.*, 477 U.S. 619, 626 (1986) ("A State may of course voluntarily submit to federal jurisdiction even though it might have had a tenable claim for abstention.").

### 1. Privileges & Immunities Clause

The Privileges and Immunities Clause protects the right of out-of-state citizens to do business in another state "on terms of substantial equality" with citizens of that State. *Sup. Ct. of N.H. v. Piper*, 470 U.S. 274, 280 (1985). The Clause prohibits discrimination enacted for the protectionist purpose of burdening out-of-state citizens. *McBurney v. Young*, 569 U.S. 221, 227 (2013) (upholding Virginia Freedom of Information Act that restricted access only to state citizens). Differential treatment of citizens and noncitizens is permitted if it is "closely related to the advancement of a substantial state interest." *Marilley v. Bonham*, 844 F.3d 841, 846 (9th Cir. 2016) (upholding California's differential fees for various commercial fishing registrations, licenses, and permits).

Plaintiff contends that OMB discriminated against him by "not allowing Plaintiff to obtain an active Oregon medical license because the Plaintiff lives in Washington and is not an Oregon resident." Mot., ECF 2 at 8. Plaintiff also argues that the certification requirements of the locum tenens license are discriminatory because in-state residents do not have to certify that they worked in Oregon every two years to maintain their license.[6] Reply, ECF 16 at 11.

---

[6] Plaintiff also argues that Oregon's failure to join the Interstate Medical Licensure Compact ("IMLC") exacerbates any physician shortages in Oregon. Reply, ECF 16 at 12–13. As Plaintiff recognizes, "participation in the IMLC would involve State Legislature approval." *Id.* at 12. Plaintiff's argument that a different licensing structure would better benefit Oregon citizens is not relevant to his claim that Oregon discriminates against noncitizen physicians. Plaintiff's argument should be raised before the Oregon State Legislature instead of this Court. *See SAS Inst., Inc. v. Iancu*, 584 U.S. 357, 368 (2018) ("Each side offers plausible reasons why its approach might make for the more efficient policy. But who should win that debate isn't our call to make.").

First, Plaintiff has not shown that he is ineligible for an Oregon medical license as a nonresident. OMB informed Plaintiff that physicians "who actively practice in Oregon, with a current Oregon practice address may register the active license at Active status." Compl., Exhibit EE, ECF 1-2 at 22 (emphasis omitted). On the present record, it appears that *every* physician with an active Oregon medical license must have a practice address in Oregon. *See* Resp., ECF 11 at 31 ("The simple fact is that Oregon places requirements not on residence but on office."). Plaintiff has not put forth any evidence that a "practice address" is another term for "residence" or that the "practice address" requirement is enforced differently between residents and nonresidents.

Plaintiff has not alleged that the practice address requirement was enacted for the discriminatory purpose of favoring Oregon residents over nonresidents. It is more likely that the requirement furthers OMB's legitimate state interest in promoting access to quality care. *See*, Mission Statement, Oregon Medical Board, https://www.oregon.gov/omb/pages/default.aspx [https://perma.cc/7L4V-J2HL] ("The mission of the Oregon Medical Board is to protect the health, safety, and wellbeing of Oregon citizens by regulating the practice of medicine in a manner that promotes access to quality care.").

Additionally, the requirement that Plaintiff maintain a "practice address" in Oregon appears facially analogous to in-state "office requirements" that apply equally to citizens and noncitizens and that have repeatedly been upheld against Privileges and Immunities Clause challenges. *See Schoenefeld v. Schneiderman*, 821 F.3d 273, 286 (2d Cir. 2016) (upholding in-state physical office requirement); *Kleinsmith v. Shurtleff*, 571 F.3d 1033, 1046 (10th Cir. 2009) (upholding "maintain a place within the state" requirement); *Tolchin v. Sup. Ct. of N.J.*, 111 F.3d 1099, 1113 (3d Cir. 1997) (upholding in-state bona fide office requirement).

PAGE 10 – OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

In *Tolchin*, the Third Circuit found that New Jersey's requirement that attorneys maintain a New Jersey office to practice law in New Jersey was upheld against a Privileges and Immunities Clause challenge for two reasons. 111 F.3d at 1113. First, the requirement similarly affected residents and nonresidents, and second, the requirement was a reasonable avenue to ensure that attorneys licensed in New Jersey are available to New Jersey courts, practitioners, and clients. *Id.* Similarly, OMB's practice address requirement applies to both Oregon residents and nonresidents and it ensures that Oregon physicians are available to Oregon patients. Physicians and attorneys are undeniably different. But, the State's interest in securing the physical availability of physicians may be even stronger than its interest in securing the physical availability of attorneys because, unlike legal services, it is not yet possible to perform many medical services remotely.

The practice address requirement may disproportionately burden nonresident physicians, but the Privileges and Immunities Clause "does not promise nonresidents that it will be as easy for them as for residents to comply with a state's law." *Schoenefeld*, 821 F.3d at 286 (2d Cir. 2016) (citation modified). Even if the practice address requirement had the effect of treating citizens and noncitizens differently, it is closely related to the advancement of the State's legitimate interest in ensuring that Oregon citizens have access to quality care.

Second, Plaintiff's contention that the locum tenens two-year certification requirement violates the Privileges and Immunities Clause is unlikely to succeed. An Oregon locum tenens medical license is changed to inactive at the time of renewal if the licensee did not practice in Oregon in the past two years. OAR 847-008-0020. The licensee is then "required to reactivate to locum tenens registration status prior to practicing in Oregon." *Id.* Plaintiff's Oregon locum tenens medical license went inactive on February 8, 2024 because he did not report any Oregon

PAGE 11 – OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

assignments during the past two years. Compl., Ex. GG, ECF 1-2 at 29. Plaintiff has not alleged that he made any attempt to reactivate his medical license, and he has not demonstrated that he is otherwise unable to do so. Because Plaintiff likely could have his locum tenens license reactivated or could apply for an active license if he obtains an Oregon practice address, he has not shown that the certification requirements for the locum tenens license likely violates his rights under the Privileges and Immunities Clause.

### 2. Due Process Clause

The Fourteenth Amendment's Due Process Clause prohibits states from depriving persons of a constitutionally protected liberty or property interest without adequate procedural protections. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 571 (1972). In determining what process is due, this Court must weigh the following factors set forth by the U.S. Supreme Court in *Matthews v. Eldridge*: (1) the private interest that will be affected, (2) the risk of an erroneous deprivation and probable value of additional safeguards, and (3) the government's interest and the burden of any additional procedures. 424 U.S. 319, 335 (1976).

Plaintiff alleges that (i) OMB's medical competency examination order lacked adequate procedural protections, (ii) OMB is engaging in fraud, misrepresentations, or is biased, and (iii) OMB published Plaintiff's name without due process. Plaintiff has not shown a likelihood of success on these claims.

#### a. Order for Medical Competency Examinations

Plaintiff has failed to show that the medical competency examination order, which was part of the disciplinary investigation, implicates federal due process protections. As an initial matter, Plaintiff has not been disciplined and has not lost his license to practice medicine. Accordingly, it is doubtful that a federally protected liberty or property interest has been

implicated. *See Humenansky v. Minn. Bd. of Med. Exam'rs*, 525 N.W.2d 559, 566 (Minn. Ct. App. 1994) (finding under the Fourteenth Amendment's Due Process Clause that no protected interest was implicated by the medical board's preliminary examination order). This Court will assume, without deciding, that the order for medical competency examinations triggers due process. Even so, Plaintiff has failed to show that he is entitled to additional procedural safeguards.

OMB was one year into the investigatory process when it ordered Plaintiff to attend the medical competency examinations. OMB received a complaint about Plaintiff in June or July of 2023. Compl., Ex. JJ, ECF 1-2 at 43. OMB then provided Plaintiff with "specific allegations regarding incompetent medical care." *Id.*, ECF 1 ¶ 47. OMB then received Plaintiff's detailed summary of his actions in December 2023, *id.* ¶ 57, and OMB issued the medical competency examination order in June 2024, *id.*, Ex. MM, ECF 1-2 at 99. OMB has not yet disciplined Plaintiff for noncompliance. Instead, OMB issued a Notice of Proposed Disciplinary Action and Plaintiff has the opportunity to respond at an upcoming administrative hearing before any discipline occurs. Plaintiff has not argued that he is unable to seek reactivation of his locum tenens medical license.

Further, OMB has the statutory authority to issue medical competency examination orders under ORS 677.420, which states that "if the board has reasonable cause to believe that any licensee is or may be unable to practice medicine . . . with reasonable skill and safety to patients, the board shall cause a competency examination of such licensee." *Id.* Further, "any licensee by practicing or by filing a registration to practice medicine . . . shall be deemed to have given consent to submit to mental or physical examination when so directed by the board." *Id.*

Plaintiff has not shown that federal due process requires any additional procedures to protect his interest in practicing medicine. The State has strong interest in regulating the practice of medicine in a manner that promotes access to quality care. Any additional procedures would place a greater burden on the government and Plaintiff has failed to show that they would better protect his interest. Further, Plaintiff retains the right to challenge any action against his license at a hearing on the Notice of Proposed Disciplinary Action. The benefit of any additional procedures in reducing the chance of an erroneous deprivation of Plaintiff's interest is likely outweighed by the burden those additional procedures would impose on the State's ability to efficiently regulate the practice of medicine.

Several state courts have found that similar orders for mental competency examinations do not offend federal due process where no immediate sanction on a medical license is imposed and the licensee retains the opportunity to contest the outcome of those examinations later. *See Fettgather v. Bd. of Psych.*, 17 Cal. App. 5th 1340, 1348–49 (2017) (finding licensee had no right to challenge mental examination order he failed to comply with); *Humenansky*, 525 N.W.2d at 566 (finding that the preliminary examination order did not implicate a federally protected liberty or property interest); *Alexander D. v. State Bd. of Dental Exam'rs*, 231 Cal. App. 3d 92, 99 (1991) (same).

Plaintiff appears to argue that he is entitled to a hearing and the right to interview witnesses before being ordered to attend medical competency examinations. Mot., ECF 2, at 7. He cites *Irland v. Iowa Bd. of Med.*, 939 N.W.2d 85 (Iowa 2020) in support. There, the court found that the board "circumvented the due process safeguards" "codified in the governing statutes" when it warned a physician that he must undergo a medical competency examination before returning to the practice of medicine. *Id.* at 87. By issuing the discipline in a letter, the

PAGE 14 – OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

board avoided the statutory requirement to specify the probable cause for the evaluation in an

order and sidestepped the licensee's statutory "right to object to the evaluation order through a

contested case hearing." *Id.* at 91–92. Here, Plaintiff has not alleged that OMB violated any

Oregon statutory procedural requirements, and he has not cited any Oregon statute that grants

him the right to object to an order for a medical competency examination before he must comply

with it. For those reasons, *Irland*, does not support his federal due process claim. In contrast,

under ORS 677.420, Plaintiff is deemed to have consented to a competency exam when directed

by the OMB.

Plaintiff is unlikely to succeed on his claim that OMB violated federal due process by

issuing him a medical competency examination order before affording him a hearing or the right

to interview witnesses.

### b. Allegations of Fraud, Misrepresentation, or Bias

Plaintiff has failed to establish at this stage that OMB's ongoing enforcement is rooted in

fraud, misrepresentation, or bias. Plaintiff alleges intentional misrepresentation by OMB and

argues that its Notice of Proposed Disciplinary Action is "not supported by facts in the medical

records and contradicts the medical record." Compl., ECF 1 ¶ 106. Plaintiff asserts that OMB

"neglected to consider" various facts related to his conduct at Salem Hospital. *E.g. id.* ¶¶ 111,

114, 116. In essence, Plaintiff asks this Court to credit the version of events he presents in

opposition to the Notice of Proposed Disciplinary Action. It is not appropriate for this Court, at

this stage, to determine which side's version of events is accurate. That is the subject of the

OMB disciplinary proceeding, which has not yet been completed.

Moreover, even crediting Plaintiff's allegations that OMB failed to consider various

facts, not all inaccuracies by the government "give rise to a constitutional claim," and "mere

carelessness is insufficient." *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017). Plaintiff's

allegations that OMB's Notice does not consider every fact and may be contradicted by the

medical record does not show that OMB's pursuit of discipline violates due process. The Notice

puts forth seven pages of factual allegations. Compl., Ex. XX, ECF 1-2 at 148. Plaintiff will have

the opportunity to challenge these purported inaccuracies and flaws in his administrative hearing

and in the state appellate process.

This Court does not credit Plaintiff's allegations that OMB backdated an amended Notice

of Proposed Disciplinary Action ("amended Notice") against him or that the amended Notice

was unsigned because OMB and its employees are trying to avoid responsibility for any factual

inaccuracies. The amended Notice was not provided to this Court, and this Court will not infer

that a missing signature on the amended Notice, without more, demonstrates knowledge that the

factual allegations are false.

Plaintiff has also not demonstrated, as a matter of law, that OMB or any administrative

judge is biased against him because they are part of the Oregon Executive Branch and may

impose fines payable to the Executive Branch. Compl., ECF 1 ¶¶ 174–79. *See Hirsh v. Justs. of*

*Sup. Ct. of Cal.*, 67 F.3d 708, 714 (9th Cir. 1995) (holding that fees paid to the State Bar alone

does not establish an impermissible financial interest, even though the Bar paid the salaries of the

Bar Court judges). Plaintiff has not shown that the ongoing disciplinary proceedings are the

result of fraud, misrepresentation, or bias. Plaintiff has little chance of success on such a due

process claim.

### c. Publishing Plaintiff's Name in a Public Report

Plaintiff alleges that OMB deprived him of his constitutionally protected liberty interest

in his professional reputation without due process of law. This Court assumes without deciding

that such a liberty interest is protected by the Constitution. In this case, OMB received a complaint about Plaintiff and investigated that complaint for nearly two years before proposing and posting a Notice of Proposed Disciplinary Action. Compl., Ex. JJ, ECF 1-2 at 43; *id.*, Ex. MM at 100. OMB provided specific allegations regarding incompetent medical care, *id.*, ECF 1 ¶ 47, and received evidence from the Plaintiff by his written statement. *Id.*, Ex. LL, ECF 1-2 at 52. OMB offered Plaintiff the opportunity to interview and demonstrate competence through its ordered medical competency examinations. *Id.*, Ex. MM, ECF 1-2 at 100–01; *id.*, Ex. NN at 109. Plaintiff failed to appear for the interview or complete those examinations.

The State has a strong interest in regulating the provision of medical care to protect its citizens and the public has a strong interest in knowing which physicians OMB is seeking to discipline. In fact, OMB is required to disclose a "notice of intent to impose a disciplinary sanction against a licensee or applicant that has been issued by vote of the board." ORS 676.175. Any erroneous deprivation to Plaintiff can likely be corrected through the state's administrative and appellate process. Plaintiff has failed to show that the short-term damage to his reputation, which may soon be undone, outweighs the benefits to the public from publicly identifying physicians subject to proposed discipline by OMB. Plaintiff has not demonstrated he is likely to succeed on his claim that OMB publishing his name in their Board Action Report offends due process.

### 3.  Equal Protection Clause

The Equal Protection Clause protects individuals from government action that intentionally treats them differently from others similarly situated if "there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Plaintiff alleges that OMB violated the Equal Protection Clause by investigating him but not investigating

PAGE 17 – OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION

other physicians who treated the same patients at Salem Hospital. Compl., ECF 1 ¶¶ 151–52.

Plaintiff has not shown that those physicians are sufficiently similarly situated. Plaintiff did not

allege that OMB received complaints about those other physicians. It may be that OMB only

received a complaint about Plaintiff and began investigating him for that reason. Moreover,

Plaintiff has not shown that OMB's actions are irrational and wholly arbitrary. Plaintiff may

contest the OMB's factual conclusions, but that does not render its investigation or proceedings

constitutionally infirm.

Plaintiff also alleges that OMB violated the Equal Protection Clause because the Oregon

State Bar provides attorneys more process than OMB provides physicians, specifically, the Bar

provides practitioners with the complaint against them. Reply, ECF 16 at 8. Plaintiff has failed to

show that physicians and attorneys are similarly situated where they are subject to different

regulations and regulatory bodies or that any difference in treatment is irrational. Plaintiff has not

demonstrated that he is likely to succeed on his equal protection claims.

This Court finds that, at this stage, Plaintiff has not demonstrated a likelihood of success

on the merits for his privileges and immunities, due process, or equal protection Section 1983

claims.

## B. Irreparable Harm

Irreparable harm is that which cannot be adequately addressed by legal remedies.

*Sampson v. Murray*, 415 U.S. 61, 88 (1974). An imminent or ongoing deprivation of

constitutional rights constitutes irreparable harm if a plaintiff has shown a likelihood of success

on those claims. *Baird v. Bonta,* 81 F.4th 1036, 1042 (9th Cir. 2023). The loss of income,

however, is generally not irreparable harm because it may be remedied by legal damages.

*Sampson*, 415 U.S at 90. "The possibility that adequate compensatory or other corrective relief

PAGE 18 – OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION

will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm," *id.*, and the time, energy, and embarrassment of defending an administrative hearing is not, on its own, irreparable harm. *Allen v. Grand Cent. Aircraft Co.*, 347 U.S. 535, 540 (1954) ("[O]nce the right of the Government to hold administrative hearings is established, a litigant cannot enjoin them merely because they might jeopardize his bank credit or otherwise be inconvenient or embarrassing.").

Here, Plaintiff has failed to establish irreparable harm. Plaintiff has alleged that he could not accept a job offer to work in Oregon because his medical license is inactive. Reply, ECF 16 at 13. He also alleges that one potential employer "may have questions" about "a pending disciplinary action by the Oregon Medical Board on his license" before proceeding with his application. *Id.*, Ex. IA at 28. Neither of these economic or reputational harms amount to irreparable injury. Plaintiff's medical license is inactive because he did not either secure the employment or take the administrative steps required to renew or reactivate it. Compl., Ex. FF, ECF 1-2 at 29. Any unfounded damage to Plaintiff's reputation, if it exists, can be remedied by swiftly challenging the proposed enforcement action through the state administrative and appellate process. Plaintiff has put forward evidence that the OMB's action has harmed him, but he has not demonstrated that any harm, even if it is proven in the future, could not be sufficiently remedied at law.

## C. Balance of Equities and Public Interest

Where the government opposes the injunction, the balance of equities and public interest factors are merged. *See Nken v. Holder*, 556 U.S. 418, 436 (2009). An injunction will not issue unless Plaintiff demonstrates that the balance tips in his favor. *Winter*, 555 U.S. at 20.

PAGE 19 – OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Here, Plaintiff has failed to show that he would likely be deprived of any constitutional rights. His interest in practicing medicine in Oregon is outweighed by the public's interest in OMB's ability to investigate and discipline physicians and, ultimately, protect the health and safety of the public. Plaintiff's interest in privacy regarding the proposed discipline is outweighed by the public's interest in knowing when a physician is the subject of OMB's disciplinary proceedings. This is particularly true where Plaintiff's evidence shows that OMB only publicized that he is involved in ongoing proceeding and that no final action has been taken. Reply, Ex. I, ECF 16 at 26.

Similarly, as related to Plaintiff's privileges and immunities claim, the State has a strong public interest in regulating the licensure of physicians. Short of a constitutional violation, Plaintiff has only shown that he was required to work and report his positions within Oregon every two years as a locum tenens physician. That minimal intrusion is outweighed by the State's interest in regulating and licensing physicians in the manner it views as best to ensure the public receives safe and effective medical care.

## CONCLUSION

This Court finds that Plaintiff has not carried his burden to warrant a preliminary injunction. This Court DENIES Plaintiff's Motion for a Preliminary Injunction, ECF 2. Although this Court decides this motion based in part on the likelihood of success on the merits and the current record, this Court is not making a final determination about the underlying merits of any of Plaintiff's claims.

**IT IS SO ORDERED.**

DATED this 8th day of September, 2025.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge