UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

JEREMY CONKLIN,

               Plaintiff,

    v.

OREGON MEDICAL BOARD, *an Oregon State Agency*; NICOLE KRISHNASWAMI, *an individual*; MICHAEL SEIDEL, *an individual*; and WALTER FRASIER, *an individual*,

               Defendants.

Case No. 3:25-cv-01173-AR

**OPINION AND ORDER**

**ARMISTEAD, United States Magistrate Judge**

Plaintiff and osteopathic physician Jeremy Conklin, representing himself,[1] brings this lawsuit challenging an ongoing disciplinary investigation by the Oregon Medical Board (OMB). In addition to suing OMB, Conklin sues OMB executive director Nicole Krishnaswami, and investigators Michael Seidel and Walter Frasier in (what appears to be) their individual

---

[1]    Plaintiff is licensed as an attorney in Washington. (*See* Compl. at 38, ECF 1 (listing Conklin's Washington bar number in his signature); Resp. at 28, ECF 24 (same).)

capacities. Conklin alleges that OMB's investigation into his conduct at Salem Hospital and inactivation of his *locum tenens* license, among other things, denied him due process, violated the Privileges and Immunities Clause, and violated the Equal Protection Clause. And those constitutional violations by the defendants resulted, Conklin alleges, in both intentional and negligent infliction of emotional distress. Defendants move under Federal Rule of Civil Procedure 12(b)(6) to dismiss all claims. For the reasons discussed below, that motion is GRANTED.

## BACKGROUND

Jeremy Conklin is an osteopathic physician who resides in Washington. In July 2018, Conklin applied for an Oregon medical license to practice at Providence Medford Medical Center in Oregon as a *locum tenens* physician. Conklin worked with a healthcare staffing agency, CompHealth, to complete his application. Conklin was informed by a CompHealth employee that, per the OMB, he did not qualify for an active Oregon medical license because he did not "live or practice within 100 miles of the Oregon border." (Compl. ¶¶ 8-10, ECF 1.)  He did, however, qualify for a *locum tenens* license—a temporary license to practice medicine in Oregon for physicians who reside out of state.[2] (*Id.*)

---

[2]    *See* OAR 847-008-0020 (1) ("Any licensee whose official state of residence is a state other than Oregon who proposes to practice intermittently within the State shall register and pay the biennial locum tenens registration fee.").

Conklin then applied for an Oregon *locum tenens* license. During the application process, Conklin was notified and fined $195 under OAR 847-008-0058[3] because of incorrect information on his Oregon license application. (Compl. ¶ 11.) Conklin moved to dismiss that civil penalty, but that motion was allegedly "ignored" by the OMB. (*Id.* ¶ 13.) Conklin eventually paid the fee and successfully obtained a *locum tenens* license in October 2018. (*Id.* ¶ 15.)

In October 2020, Conklin received a notice from OMB that his license would be changed to inactive status if he failed to report any *locum tenens* assignments in Oregon from 2018 to 2019. Conklin asserts that "physicians who are residents of Oregon and have an active Oregon Medical License" are not required to provide yearly proof of employment. (*Id.* ¶¶ 16-18.) Before receiving that notice, Conklin asked OMB why he could not obtain an Oregon medical license and thus eliminate the need to report his employment every year. (*Id.* ¶ 19, Ex. EE, ECF 1-2 at 21.)[4] Conklin alleges in his complaint that, in response, OMB told him that "because [he] did not live in Oregon, but intermittently practiced medicine less than 240 days in Oregon every two

---

[3]    Under that rule, "omissions or false, misleading, or deceptive statements or information on any [OMB] application, affidavit or registration is a violation of ORS 677.190" and grounds for a fine.

[4]    Conklin relies upon several exhibits attached to his complaint, the validity of which defendants do not dispute. The court therefore incorporates those exhibits by reference. *See Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1159 (9th Cir. 2012) ("[T]he district court may but is not required to incorporate documents by reference."); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003) (explaining that a document "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim").

years," he was only eligible for a *locum tenens* license and not an Oregon medical license.[5] Conklin then reported his 2018-19 employment, and his license was renewed. (*Id.* ¶¶ 20-21.)

OMB again issued a notice to Conklin on January 31, 2024, regarding his failure to timely report any employment in Oregon. (*Id.* ¶ 22, Ex. FF, ECF 1-2 at 26.) On February 8, 2024, when Conklin did not respond, he was informed by a letter signed by Krishnaswami that his license was changed to inactive status. (*Id.* ¶ 23, Ex. GG, ECF 1-2 at 29.)

Before OMB changed Conklin's license to inactive status, Conklin took a *locum tenens* contract with Salem Hospital in Oregon. Conklin was scheduled for a night shift surgery assignment starting on June 5, 2023. During that shift, Conklin saw five patients and tried to schedule each of them for emergency surgeries that evening. Yet Conklin was told by Salem Hospital staff that there were no available operating rooms or teams to staff operating rooms. (*Id.* ¶¶ 24-26.) Conklin was able to schedule one of his cases, but Salem Hospital required that another doctor proctor the operation. The proctor and Conklin disagreed about medical procedures, and the proctor asked Conklin to leave before the operation was finished. Conklin alleges that another of his patients died because of a delay of an operation. (*Id.* ¶¶ 28-29, 31.)

---

[5]     OMB's response, attached to Conklin's complaint, stated the following:

> Physicians who actively practice in Oregon, with a current Oregon practice address may register the active license at Active status. Physicians who do not live in Oregon, but who practice intermittently within Oregon for no more than 240 days every two years may register the active license at Locum Tenens status, per Oregon Administrative Rule (OAR).

(Ex. EE, ECF 1-2 at 22.)

Page 4 – OPINION AND ORDER
*Conklin v. Oregon Medical Board, et al.*, 3:25-cv-01173-AR

The next day, Conklin complained to the Salem Health Medical Director and CEO that the proctor interfered with his treatment of a patient. That same day, Salem Hospital canceled Conklin's *locum tenens* assignment. (*Id*. ¶¶ 32-33.) Conklin received a notice, dated July 5, 2023, from OMB regarding a complaint from Salem Hospital, alleging that Conklin provided medically incompetent care for four patients he treated on the night of June 5 and acted in an unprofessional and dishonorable manner. (*Id*. ¶¶ 38-39.) On July 16, Conklin asked OMB to provide more details about the allegations, which OMB provided. Conklin responded on December 6, 2023, with a description of his actions. (*Id*. ¶¶ 16, 47)

Meanwhile, Salem Hospital's peer review committee reviewed Conklin's treatment of the four patients and determined in October 2023 that there were no deficiencies in Conklin's care and that he had not behaved dishonorably or unprofessionally. (*Id*. ¶¶ 42-43.)

OMB continued to pursue its investigation into Conklin's conduct at Salem Hospital, however. In June 2024, OMB ordered Conklin to undergo two medical competency examinations, one in Kansas and one in Colorado. (*Id*. ¶ 48, Ex. MM, ECF 1-2 at 99-101.) Conklin was required to schedule both within 30 days and complete the assessment in Colorado within 150 days and the assessment in Kansas within 90 days. (*Id*.) The evaluations were to be undertaken at Conklin's own expense, which would cost him more than $10,000 plus the cost of travel, lodging, and lost work. (*Id*. ¶¶ 48, 69.) Conklin does not allege one way or another if he replied to the order or completed the evaluations.

On September 5, 2024, OMB requested an in-person interview before OMB's Investigative Committee at OMB's office in downtown Portland on December 5, 2024. (*Id*. ¶ 49; Ex. NN, ECF 1-2 at 109.) Conklin responded by saying he would be happy to appear for the

Page 5 – OPINION AND ORDER
*Conklin v. Oregon Medical Board, et al.*, 3:25-cv-01173-AR

interview but by Zoom. (*Id*.) OMB informed Conklin that a virtual interview was not an option. Conklin (believing that ORS § 677.320—OMB's basis for the interview request—does not require an in-person interview) did not appear for the requested interview. (*Id*. ¶ 49, Ex. NN, ECF 1-2 at 108.)

On June 3, 2025, OMB sent Conklin a Notice of Proposed Disciplinary Action for violations of the Medical Act (Notice), including unprofessional or dishonorable conduct, the inability to safely and skillfully practice medicine, gross and repeated negligence in the practice of medicine, failure to comply with the order to complete the medical evaluations, and failing to appear for the December 5 interview in Portland. (*Id*. ¶ 51, Ex. XX, ECF 1-2 at 140-55.) Attached to the Notice was a proposed stipulated order for which Conklin would neither admit nor deny the allegations but OMB would find that he engaged in the alleged conduct, and Conklin would not practice medicine in Oregon for two years. (*Id*. at Ex. XX, ECF 1-2 at 162-63.) Conklin alleges that the allegations in the notice were neither based on the medical records nor judged against the standard of care. (*Id*. ¶ 51.)

On July 7, 2025, Conklin filed suit in this court, bringing the following § 1983 claims:

> **Claim One.** All defendants violated his Fourteenth Amendment due process rights because the July 5, 2023, notice of a complaint did not provide adequate notice of what he was alleged to have done wrong (*Id*. ¶¶ 54-57), by refusing to provide Conklin procedural safeguards in ordering him to undergo the medical competency evaluations, including an unbiased tribunal, explaining why the evaluations were necessary, the right to cross-examine the witness who furnished information for the evaluation order, and written findings of fact for why OMB decided it needed the evaluations. (*Id*. ¶¶ 58-70.) In addition to damages, Conklin seeks a declaratory judgment and injunctive relief in which a Special Master would be appointed to oversee the OMB for 5 years.

Page 6 – OPINION AND ORDER
*Conklin v. Oregon Medical Board, et al.*, 3:25-cv-01173-AR

**Claim Two**. OMB and Krishnaswami, in accordance with OAR 847-008-0020(4),[6] inactivated his *locum tenens* license on the ground that he had not reported assignments in Oregon for the previous two years. Because Oregon physicians are not subject to that requirement, OMB and Krishnaswami violated the Fourteenth Amendment's Privileges and Immunities Clause by treating non-Oregon physicians differently from Oregon physicians. In addition to damages, he seeks a declaratory judgment and a permanent injunction that prevents OMB from enforcing that rule. (*Id.* ¶¶ 84-104.)

**Claim Three.** Defendants violated the Fourteenth Amendment's Equal Protection Clause and included false allegations in its Notice of Proposed Disciplinary Action and investigated him and no other treating physician. (*Id.* ¶¶ 151-53.) Also alleged is that OMB and Krishnaswami extorted him in its Notice of Proposed Disciplinary Action by manufacturing false allegations and offering to settle if Conklin paid a fine of $10,000, in violation of ORS § 31.230.[7] (*Id.* ¶¶ 147-52.) In addition to seeking money damages, Conklin seeks a declaratory judgment, a permanent injunction appointing a special master, and writ of mandamus directing the United States Department of Justice to investigate OMB.

**Claim Four.** All defendants violated his Fourteenth Amendment due process rights when they retaliated against Conklin for asserting that OMB was violating his constitutional rights by ordering him to undergo medical competency evaluations. He seeks damages, and declaratory and injunctive relief.

---

[6]    OAR 847-008-0020(4) provides that a

licensee who registers as locum tenens and who does not practice in Oregon during the biennium, shall be registered as inactive at the time of registration renewal, and shall be required to reactivate to locum tenens registration status prior to practicing in Oregon.

[7]    As part of Claim Three, for the purpose of showing "motive, opportunity, intent, plan, absence of mistake, and lack of accident" as well as to show that OMB investigates physicians to make money, Conklin alleges that OMB fined Conklin in 2018 for incorrect information in his license application without proof that his answer was intentionally false and that, were he to have a hearing before an ALJ, the ALJ would not be unbiased because any penalty imposed would paid to the executive branch. (Compl. ¶¶ 156-182.)

Page 7 – OPINION AND ORDER
*Conklin v. Oregon Medical Board, et al.*, 3:25-cv-01173-AR

In addition to those § 1983 claims, Conklin brings the following two Oregon common law claims.

> **Claim Five.** Conklin claims intentional infliction of emotional distress, alleging that defendants' actions—intentionally violating his constitutional rights—were extreme and outrageous conduct, therefore causing him extreme emotional distress. He seeks damages.

> **Claim Six.** Conklin claims negligent infliction of emotional distress, alleging that defendants knew or should have known that they were violating his constitutional rights and retaliating against him, thus causing him extreme emotional distress. He seeks damages.

In **Claims Seven** and **Eight**,[8] and his **Prayer for Relief,** he seeks an assortment of remedies, including a declaratory judgment that addresses his constitutional claims, also asking the court to declare that OMB issues licenses to physicians who are non-Oregon residents and that Oregon cannot recoup costs for hearings requested by applicants and licensees. Conklin also seeks injunctive relief that essentially appoints a special master to oversee OMB to ensure that it does not engage in actions similar to those involving him.

When Conklin filed his complaint, he also moved for a preliminary injunction, which sought, among other things, reactivation of his medical license and a stay of OMB's investigation until this case is resolved. (ECF 2.) Judge Immergut denied the motion, concluding that Conklin had not demonstrated that he was likely to succeed on the merits or to be irreparably harmed without preliminary relief, or that the balance of equities and public interest favored an injunction. (Immergut Order at 2, ECF 22.)

---

[8]    Conklin labels these claims as the "Sixth Cause of Action" And "Seventh Cause of Action."

On January 20, 2026, Conklin, asserting that OMB's withholding of evidence compromised the fairness of the case against him, requested a temporary restraining order to stay a scheduled contested case hearing before an administrative law judge. (Mot. TRO at 6-14, ECF 31.) This court, having obtained consent for magistrate judge jurisdiction, denied the TRO request. (Order, ECF 35.) The court held oral argument on defendants' motion to dismiss on May 27, 2026.

## LEGAL STANDARD

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). The court, when assessing a complaint's factual sufficiency, must (1) accept plaintiff's well-pleaded material facts alleged in the complaint as true and (2) construe factual allegations in the light most favorable to the plaintiff. *Wilson v. Hewlett-Packard Co.,* 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n,* 629 F.3d 992, 998 (9th Cir. 2010).

The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca,* 652 F.3d 1202, 1216 (9th Cir. 2011).

Page 9 – OPINION AND ORDER
*Conklin v. Oregon Medical Board, et al.*, 3:25-cv-01173-AR

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Plausibility is not probability, but plausibility "asks for more than a sheer possibility that a defendant acted unlawfully." *Mashiri v. Epsten Grinnell & Holmes*, 845 F.3d 984, 988 (9th Cir. 2017).

## DISCUSSION

### A.    *Sovereign Immunity*

Under the Eleventh Amendment, a state is immune from suit in federal court unless (1) Congress has abrogated the state's immunity or (2) the state itself has waived it. *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253-54 (2011); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). That "jurisdictional bar applies regardless of the nature of the relief sought." *Pennhurst*, 465 U.S. at 100.

A state is not a "person" under § 1983 and cannot be held liable for damages. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989) (explaining that congress did not abrogate Eleventh Amendment sovereign immunity by passing § 1983). That immunity extends to agents or arms of the state. *P. R. Aqueduct & Sewer Auth. v. Metcalf*, 506 U.S. 139, 144 (1993). Medical boards are a "state agency" for immunity purposes. *Bondick v. Mitchell,* 6:22-

Page 10 – OPINION AND ORDER
*Conklin v. Oregon Medical Board, et al.*, 3:25-cv-01173-AR

cv-00722-AA. 2023, WL 1103615 *2 (D. Or. 2023) (citing *Forster v. County of Santa Barbara*, 896 F.2d 1146, 1149 (9th Cir. 1990)).

Conklin does not challenge that OMB is an arm of the state and entitled to sovereign immunity. (MTD at 6, ECF 18.) Because OMB has not waived immunity nor consented to suit, OMB is entitled to sovereign immunity and Conklin's federal and state law claims against OMB must be dismissed. *See Blair v. Toran*, 1999 WL 1270802, *23 (D. Or. Dec. 2, 1999), *aff'd*, 12 F. App'x 604 (9th Cir. 2001) ("[a]lthough the State of Oregon has consented to be sued in Oregon courts for torts committed by its employees, officers, or agents while acting within the course and scope of their employment under the [Oregon Tort Claims Act], it has not consented to be sued in federal court for those torts").

The Eleventh Amendment also prohibits damages actions against state officials who are sued in their official capacity. *Romano v. Bible*, 169 F.3d 1182, 1185 (9th Cir. 1999). If Conklin seeks damages from the individual defendants in their official capacities, the Eleventh Amendment bars that remedy.

**B.    *Absolute Immunity***

*Section 1983 Claims.* Although the Eleventh Amendment bars damages actions against the individuals in their official capacities, it does not prevent seeking damages against them in their individual capacities. Even so, absolute immunity may prevent, in some circumstances, recovering damages from the individual defendants. That is because the immunity that judges enjoy from damages liability for their judicial acts is extended to state officials and agency representatives sued under § 1983 whose actions are functionally comparable to the actions of a prosecutor or judge. *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 923 (9th Cir. 2004); *Burton*

Page 11 – OPINION AND ORDER
*Conklin v. Oregon Medical Board, et al.*, 3:25-cv-01173-AR

*v. Infinity Cap. Mgmt.*, 862 F.3d 740, 747 (9th Cir. 2017) ("Absolute immunity is not reserved solely for judges, but extends to nonjudicial officers for all claims relating to the exercise of judicial functions.") (citation modified); *Miller v. Gammie*, 335 F.3d 889, 898 (9th Cir. 2003) (stating that "[u]nder certain circumstances, absolute immunity is also extended to agency representatives performing functions analogous to those of a prosecutor or a judge"). "The justification for absolute immunity is the protection of the judicial process. It shields independent and impartial adjudication and prevents the 'deflection of [an officer's] energies from [the officer's] public duties.'" *Burton*, 862 F.3d at 747 (quoting *Burns v. Reed*, 500 U.S. 478, 485 (1991)).

Courts apply what are known as the *Butz* factors[9] to determine whether an officer's actions are of a judicial nature and entitled to absolute immunity. *Buckwalter v. Nev. Bd. of Med. Exam'rs*, 678 F.3d 737, 740 (9th Cir. 2012) (citing *Butz v. Economou,* 438 U.S. 478, 512 (1978)). The Ninth Circuit has applied the *Butz* factors to conclude that Idaho and Nevada medical board members' actions were entitled to quasi-judicial immunity for acts occurring during a disciplinary hearing process. *See Olsen*, 363 F.3d at 922-24 (board members immune from

---

9       Those six non-exhaustive factors are

> (1) the need to ensure that the individual can perform the individual's functions without harassment or intimidation; (2) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (3) the insulation from political influence; (4) the importance of precedent; (5) the adversarial nature of the process; and (6) the correctability of an error on appeal.. The court then must determine whether the officers' actions "are judicial or closely associated." *Mishler*, 191 F.3d at 1007.

decisions and actions revoking and denying the license of a physician assistant); *Buckwalter v. Nev. Bd. of Medical Examiners*, 678 F.3d 737, 740-47 (2012) (board members immune for exercising emergency summary suspension authority of a physician); *Mishler v. Clift*, 191 F.3d 998 (1999) (board members immune for disciplinary actions against physician).

In this district, judges have provided absolute immunity to OMB employees other than its board members for conduct related to disciplinary proceedings. *LaTulippe v. Or. Med. Bd.*, 3:24-cv-00456-SB, 2025 WL 1692418, at *2 (D. Or. June 16, 2025) ("members and staff of the Oregon Medical Board are entitled to absolute immunity only in their performance of judicial and prosecutorial functions"); *Thomas v. Harder*, No. 3:22-cv-00944-JR, 2023 WL 1815197, at *4 (D. Or. Feb. 8, 2023) (first citing *Dover v. Haley*, No. 3:13-cv-01360-BR, 2013 WL 6190165, at *3 (D. Or. Nov. 26, 2013), *aff'd*, 616 F. App'x 295 (9th Cir. 2015); and then citing *Read v. Haley*, No. 3:12-cv-02021-MO, 2013 WL 1562938, at *7 (D. Or. Apr. 10, 2013), *aff'd*, 650 F. App'x 492 (9th Cir. 2016), *cert. denied*, 580 U.S. 933 (2016)), *aff'd*, 2024 WL 4403868 (9th Cir. Oct. 4, 2024)). The court agrees with the conclusions of those decisions that OMB staff members—alleged to have violated § 1983—can be entitled to absolute immunity for actions related to disciplinary proceedings.

Krishnaswami, Seidel, and Frasier assert that they are entitled to absolute immunity because their conduct alleged in Conklin's complaint constituted "the beginning of an adjudicatory process." (MTD at 10.) It is Conklin's position that the actions taken by the individual defendants were purely investigatory, as only OMB board members may decide whether to proceed to discipline. (Resp. at 19-20.) Although not cited in his briefing, Conklin relied on *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993), at oral argument to support his position.

Page 13 – OPINION AND ORDER
*Conklin v. Oregon Medical Board, et al.*, 3:25-cv-01173-AR

When considering whether a prosecutor was entitled to absolute immunity, *Buckley* drew a distinction between acts taken in the prosecutor's role as an advocate and acts that more closely resemble that of an investigator or detective. 509 U.S. at 273-74. Under *Buckley*, a prosecutor's absolute immunity does not begin the moment charges are filed but extends to preliminary actions, as long as those actions are taken in "preparation for the initiation of a prosecution." *Id.* at 273 (describing "evaluating evidence and interviewing witnesses" as an example of conduct worthy of absolute immunity). Absolute immunity does not apply, however, to investigative functions like "searching for the clues and corroboration that might give [the prosecutor] probable cause to recommend that a suspect be arrested." *Id.* Only qualified immunity is available in those instances. *Id.* at 273-74.

At oral argument, Conklin asserted that everything preceding the OMB June 2025 Notice of a Proposed Disciplinary Action was investigatory, rather than adjudicatory. In his view, the individual defendants were merely gathering information in an effort to determine whether the complaint against him had merit, with OMB board members ultimately deciding whether to pursue a disciplinary proceeding. Defendants responded that Conklin is essentially splitting hairs, and none of the controlling cases parse the issue as finely as he is attempting here.

Rather than defining the individual defendants' specific actions as investigatory or adjudicatory, both parties chose to categorize all their conduct as strictly one or the other. A review of Conklin's complaint and attached exhibits attribute the following conduct to each defendant: Krishnaswami signed the letters notifying Conklin of his civil penalty and that his *locum tenens* license had been changed to inactive status, as well as the orders for the competency evaluations and the notice of the proposed disciplinary action. Seidel provided

Page 14 – OPINION AND ORDER
*Conklin v. Oregon Medical Board, et al.*, 3:25-cv-01173-AR

Conklin with notice of the complaint filed against him, and Frasier provided notice of the competency evaluations and proposed disciplinary orders.

The court concludes that the individual defendants have absolute immunity for conduct related to the disciplinary proceeding and investigation of Conklin's shift at Salem Hospital. The notices and evaluation orders Conklin takes issue with were in furtherance of OMB's statutory obligations to investigate and adjudicate the complaint before it. The OMB and its board members depend on its executive director and investigators to perform its prosecutorial and quasi-judicial functions. *See Olsen*, 363 F.3d at 928 ("procedural steps involved in the eventual decision denying [plaintiff] her license reinstatement" were "acts are inextricably intertwined with [defendants'] statutorily assigned adjudicative functions and are entitled to the protections of absolute immunity"); ORS § 677.280 (permitting the OMB to employ "investigators and staff for the purpose of enforcing the laws relating to this chapter and securing evidence of violations").

Oregon law also extends prosecutorial immunity to not just board members, but administrative and investigative staff. *See* ORS § 677.335. That statute does not imbue the individual defendants with absolute immunity against Conklin's federal claims. *See LaTulippe*, 2025 WL 1692418, at *5 ("Oregon statutory immunities are not controlling in a Section 1983 case.") It does, however, reveal that the legislature anticipated OMB staff operating in a prosecutorial or quasi-judicial role on behalf of board members.

But Claim 2—directed at OMB and Krishnaswani—alleges conduct separate from the disciplinary investigation. Because that conduct is not adjudicative and unrelated to the disciplinary proceeding, Krishnaswami does not enjoy absolute immunity for the conduct related

Page 15 – OPINION AND ORDER
*Conklin v. Oregon Medical Board, et al.*, 3:25-cv-01173-AR

to the inactivation of Conklin's *locum tenens* license or any actions she took concerning Conklin's ineligibility for an Oregon medical license.

In sum, with respect to Conklin's § 1983 claims, all individual defendants have absolute immunity for damages sought for Claims 1, 3, and 4. But as to Claim 2, Krishnaswami is not entitled to absolute immunity.

*State Law Claims.* For claims brought under Oregon law, judges are immune from personal liability for acts taken in the performance of judicial business unless jurisdiction for their actions is clearly absent. *See Utley v. City of Independence,* 240 Or. 384, 386-87 (1965). That immunity is not only for judges—"[o]ther officials who are performing acts associated with the judicial process may be protected as well." *Praggastis v. Clackamas County,* 305 Or. 419, 427 (1988) ("Judicial immunity is granted or withheld on the basis of the nature of the function being performed, and not on the basis of the office."). An official's actions are judicial or quasi-judicial for the purpose of extending immunity if they

> are functionally comparable to judicial actions or involve decisions normally performed by judges in their judicial capacity, whether the action depends on legal opinions or discretionary judgments comparing the facts of a present situation with general legal questions, and whether the acts in question are primarily concerned with the official's role as a judicial or quasi-judicial officer.

*Id.*; *see also Read v. Haley*, 3:12-cv-02021-MO, 2013 WL 1562938, at *6 (D. Or. Apr. 10, 2013), *aff'd*, 650 F. App'x 492 (9th Cir. 2016). And the Oregon legislature has afforded OMB members and its administrative and investigate staff the "the same privilege and immunities from civil and criminal proceedings arising by reason of official actions as prosecuting and judicial officers of the state." ORS § 677.335(1).

With that said, for Conklin's two state law claims—Claims 5 and 6, individual defendants

have immunity to the extent that they are directed to their actions taken related to the Salem Hospital disciplinary proceeding. Again, those actions came after Salem Hospital filed its complaint and were integral to the ensuing disciplinary investigation, which are judicial or quasi-judicial functions. However, Krishnaswami does not have immunity for Claims 5 and 6 to the extent they are directed to her actions concerning the inactivation of Conklin's *locum tenens* license or other actions she took with respect to Conklin's ineligibility for an Oregon medical license.

C.    *Qualified Immunity*

*Claim 2.* Although Krishnaswami is not protected by absolute immunity for Claim 2, she is protected by qualified immunity because Conklin has failed to allege facts sufficient to demonstrate that her conduct related to the *locum tenens* inactivation and Conklin's ineligibility for an Oregon medical license violated clearly established law.

Qualified immunity protects public officials from liability under § 1983 unless a plaintiff shows (1) the official violated the plaintiff's statutory or constitutional right; and (2) the constitutional right was "clearly established in light of the specific context of the case at the time of the events in question." *Mattos v. Agarano*, 661 F.3d 433, 440 (9th Cir. 2011) (internal quotations omitted). To be clearly established, the right's contours must be "sufficiently definite that any reasonable official in [his or her] shoes would have understood that he [or she] was violating it." *Hardwick v. County of Orange*, 844 F.3d 1112, 1117 (9th Cir. 2017) (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014)). At the motion to dismiss stage, the court considers "whether the complaint alleges sufficient facts, taken as true, to support the claim that

the officials' conduct violated clearly established constitutional rights." *Keates v. Koile*, 883 F.3d 1228, 1235 (9th Cir. 2018).

As Judge Immergut observed in her Order denying Conklin's Motion for a Preliminary Injunction, application of OAR 846-008-0015 does not violate the Privileges and Immunities Clause because that rule concerns the requirement that every physician with active registration status have a practice address—not a residence—within 100 miles of Oregon's border. Just as Conklin failed to provide argument or evidence to Judge Immergut that "'practice address' is another term for 'residence' or that the 'practice address' requirement is enforced differently between residents and nonresidents," he fails to do so here. (Immergut Order at 10.) And as to Conklin's position that the *locum tenens* two-year certification requirement violates the Privileges and Immunities Clause, it remains that Conklin has not alleged that he made any attempt to reactivate his license or cannot do so. Consequently, the court agrees with Judge Immergut's well-reasoned analysis to conclude that he has not plausibly alleged that defendants violated the Privileges and Immunities Clause.

Conklin also does not allege sufficient facts to show Krishnaswami violated clearly established law. Claim 2 alleges that Krishnaswami sent Conklin a letter stating that his *locum tenens* medical license had been inactivated because he had not reported any assignments in Oregon in the past two years, as required by OAR 847-008-0020(4). Conklin's theory that the rule violates the Privileges and Immunities Clause of the Fourteenth Amendment is a novel theory for which the Ninth Circuit has not decided is unconstitutional. Even if Claim 2 contained sufficient factual allegations to make out a constitutional violation, Krishnaswami is entitled to qualified immunity. The court is not persuaded that the case on which Conklin relies, *Supreme*

Page 18 – OPINION AND ORDER
*Conklin v. Oregon Medical Board, et al.*, 3:25-cv-01173-AR

*Court of New Hampshire v. Piper*, 470 U.S. 274 (1985), supports his legal theory. In *Piper*, the Supreme Court held that the exclusion of a nonresident from admission to the New Hampshire attorney bar ran afoul of the Clause. That case, however, does not have the specificity required to put Krishnaswami on notice that sending Conklin the letter that his *locum tenens* license was inactivated violated the Clause. *See Mullenix v. Luna*, 577 U.S. 7, 11, (2015) (per curiam) (stating that a right is clearly established when it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right").

Indeed, as discussed by Judge Immergut, in-state office requirements that apply equally to citizens and noncitizens have repeatedly been upheld against Privileges and Immunities Clause challenges. (Immergut Order at 10, citing *Schoenefeld v. Schneiderman*, 821 F.3d 273, 286 (2d Cir. 2016) (upholding instate physical office requirement); *Kleinsmith v. Shurtleff*, 571 F.3d 1033, 1046 (10th Cir. 2009) (upholding "maintain a place within the state" requirement); *Tolchin v. Sup. Ct. of N.J.*, 111 F.3d 1099, 1113 (3d Cir. 1997) (upholding in-state bona fide office requirement).

Conklin fails to identify precedent that clearly establishes "the violative nature of [Krishnaswami's] particular conduct . . . in light of the specific context of the case," such that any reasonable officer would have understood she was violating the Constitution. *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (emphasis and citations omitted); *see Moore v. Garnand*, 83 F.4th 743, 753 (9th Cir. 2023) (noting that the plaintiff has the "burden to identify the clearly established law"). Krishnaswami is entitled to qualified immunity for Claim 2.

*Claims 1, 3, and 4.* Although the court concludes that the individual defendants are absolutely immune for actions related to the disciplinary investigation, it also recognizes that

Page 19 – OPINION AND ORDER
*Conklin v. Oregon Medical Board, et al.*, 3:25-cv-01173-AR

"[t]he line between investigatory/administrative work, and the work done in preparation for a prosecutor's case is not as black and white as most would like." *Flowers v. Seki*, 45 F. Supp. 2d 794, 808 (D. Haw. 1998). Accordingly, the court considers whether the individual defendants are also entitled to qualified immunity on Claims 1, 3, and 4 and concludes that they are.

Claims 1 and 4 assert violations of the Fourteenth Amendment's Due Process Clause. Like Judge Immergut, the court notes here that OMB has not issued a final disciplinary decision, and Conklin has not yet lost his license to practice medicine in Oregon. Thus, no federally protected liberty or property interest is "immediately at stake." (Immergut Order at 12-13 (citing *Humenansky v. Minn. Bd. of Med. Exam'rs*, 525 N.W.2d 559, 566 (Minn. Ct. App. 1994) (finding under the Fourteenth Amendment's Due Process Clause that no protected interest was implicated by the medical board's preliminary examination order)).)

Conklin alleges in Claim 1 that OMB violated his due process rights by failing to provide adequate notice of what he was alleged to have done wrong in the July 2023 notice of a complaint (sent by Seidel) and by refusing to provide certain procedural safeguards in ordering him to undergo the medical competency evaluations (sent by Frazier and signed by Krishnaswami). (Compl. ¶¶ 54-70.)

Claim 1 does not establish a due process claim. To begin with, Conklin takes issue with the fact that he was not provided with more details or with a copy of the original complaint lodged against him. (Resp. at 13.) Due process requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). The July 2023 notice provided Conklin with the alleged charges, the date of the

Page 20 – OPINION AND ORDER
*Conklin v. Oregon Medical Board, et al.*, 3:25-cv-01173-AR

incident, the relevant patient names, and the timeline for response. (Ex. JJ, ECF 1-2 at 43.) Conklin does not advance any argument to explain why that notice is insufficient. Nor does he identify any binding precedent clearly establishing that such a notice is inadequate.

The evaluation orders also do not amount to a due process violation. Conklin argues that he has a constitutional right to certain procedural safeguards upon receiving an order to undergo the competency evaluations—such as the right to cross examine the witness who furnished the information to OMB and an unbiased tribunal. Conklin cites two cases, but his reliance on each is misplaced. In *Irland v. Iowa Bd. of Med.*, 939 N.W.2d 85 (2020), the Iowa Board of Medicine issued a confidential letter to the physician plaintiff that required him to take a competency evaluation if he wished to resume practicing medicine. The Iowa Supreme Court held that the letter "imposed conditional discipline without formal action," in violation of reporting requirements and an administrative rule granting licensees the right to object to an evaluation order through a contested hearing. 939 N.W.2d at 91-92. *Irland* noted that, by imposing formal discipline in a purportedly "informal" letter, the Board had "circumvented [] due process safeguards" afforded by Iowa law. *Id.* at 87.

Judge Immergut observed in in her preliminary injunction order that *Irland* is readily distinguishable. For one, Conklin does not point to a comparable Oregon rule or statute granting licensees the right to object to a competency evaluation order. And for two, Conklin's failure to comply would (and presumably did) result in a contested disciplinary hearing, along with appropriate procedural safeguards. (*See* Ex. MM, ECF 1-2 at 101 (noting that failure to comply may result in disciplinary action by the Board).) The court in *Irland*, however, recognized that the Board's letter "effectively prevented [plaintiff] from again practicing medicine without

Page 21 – OPINION AND ORDER
*Conklin v. Oregon Medical Board, et al.*, 3:25-cv-01173-AR

meeting the Board's conditions." 939 N.W.2d at 91. That is, the Iowa Board imposed discipline without a formal investigation or the attendant procedural safeguards.

The other case cited by Conklin, *Nguyen v. State, Dep't of Health Med. Quality Assurance Comm'n*, 144 Wash. 2d 516 (2001), is also not helpful. There, the Washington Supreme Court held that the Due Process Clause requires proof by clear and convincing evidence in a medical disciplinary hearing. Claim 1 does not concern any actions taken or evidence put forth by defendants during Conklin's disciplinary hearing (and could not, because his disciplinary hearing occurred after he filed this action). In sum, Conklin does not establish a due process violation. And even assuming he did, Conklin does not point to any binding precedent demonstrating that the individual defendants' conduct fan afoul of any clearly established law.

Relatedly, Conklin asserts in Claim 4 that all defendants "retaliated" against him by ordering the competency evaluations. (Compl. ¶¶ 187-197.) Those allegations are conclusory and do not plausibly allege a constitutional violation. *See Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012) (plaintiff's conclusory allegations insufficient to establish § 1983 liability and overcome qualified immunity). The individual defendants are entitled to qualified immunity for Claims 1 and 4.

Claim 3 alleges that defendants violated the Fourteenth Amendment's Equal Protection Clause by investigating Conklin and no other treating physicians. (*Id.* ¶¶ 151-53.) Also alleged is that OMB and Krishnaswami violated his due process rights and extorted him by manufacturing false allegations and offering to settle if Conklin paid a fine of $10,000, in violation of ORS § 31.230. (*Id.* ¶¶ 147-52.) Those allegations also do not make out a clearly established constitutional violation. The individual defendants are entitled to qualified immunity for Claim 3.

Page 22 – OPINION AND ORDER
*Conklin v. Oregon Medical Board, et al.*, 3:25-cv-01173-AR

The Equal Protection Clause protects individuals from government action that intentionally treats them differently from others similarly situated if "there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). But Conklin's complaint advances no facts about how and in what way the allegedly "similarly situated" physicians are in fact, similarly situated, beyond merely treating the same patient. Conklin does not allege, for example, that other physicians received complaints, but OMB declined to pursue an investigation into them. Conklin did not provide any additional details at oral argument or in his response or sur-reply to support his claim. Conklin also did not provide, nor did the court locate, any binding precedent clearly establishing that investigating a treating physician following a formal complaint, and not every other treating physician, is an equal protection violation. The individual defendants are protected by qualified immunity for Conklin's equal protection claim.

Finally, Conklin's allegations that OMB manufactured evidence against him are also inadequate to overcome qualified immunity. Even taking Conklin's allegations as true, without a resulting deprivation, false allegations alone do not support a due process claim. *See Johnson v. Warden*, 2:23-cv-0908 KJM JDP (PC), 2024 WL 2411723, at *1 (E.D. Cal. May 23, 2024), *reconsideration denied*, 2:23-cv-0908 KJM JDP (PC), 2024 WL 3905259 (E.D. Cal. Aug. 22, 2024) (collecting cases); *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017) (observing that plaintiff failed to state a deliberate fabrication claim because he did not allege a deprivation of liberty and thus did not state a due process claim based on the same reasoning). Conklin does not allege that OMB has revoked his license or suspended his ability to practice medicine in

Page 23 – OPINION AND ORDER
*Conklin v. Oregon Medical Board, et al.*, 3:25-cv-01173-AR

Oregon.[10] Conklin's complaint does not, and cannot, plausibly allege that defendants violated his constitutional due process rights by manufacturing allegations against him. Krishnaswami, Seidel, and Frasier are entitled to qualified immunity for Claim 3.

## D.    Younger *Abstention*

Having determined that OMB and the individual defendants are protected by sovereign, absolute, or qualified immunity from Conklin's federal claims for damages, the court considers those claims seeking injunctive relief. Neither absolute nor qualified immunity protects state officials or state agencies from injunctive relief. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 73 (1996) (under the *Ex parte Young* doctrine, the Eleventh Amendment does not bar a "suit against a state official when that suit seeks ... prospective injunctive relief"); *Am. Fire, Theft & Collision Managers, Inc.*, 932 F.2d at 818. *Younger* abstention, however, requires that the court abstain from adjudicating Conklin's constitutional claims for injunctive relief.

The Supreme Court in *Younger v. Harris*, 401 U.S. 37 (1970), reaffirmed the long-standing principle that federal courts sitting in equity cannot, absent exceptional circumstances, enjoin pending state criminal proceedings. *Younger* was later extended to civil enforcement actions "akin to" criminal proceedings, *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 604 (1975), and to suits challenging "the core of the administration of a State's judicial system," *Juidice v. Vail*, 430 U.S. 327, 335 (1977). In civil cases, *Younger* abstention is appropriate where state court proceedings (1) are ongoing; (2) are a quasi-criminal enforcement action or involve a state's interest in enforcing the orders and judgments of its courts; (3) implicate important state

---

[10]    As of the date of oral argument, the disciplinary action remained under advisement with the ALJ.

interests; (4) provide an adequate opportunity to raise federal challenges; and (5) would be enjoined by the federal court action or where the federal proceeding would have the practical effect of doing so. *See Rynearson v. Ferguson,* 903 F.3d 920, 924 (9th Cir. 2018) (citing *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 758 (9th Cir. 2014)).

In *Buckwalter*, the Ninth Circuit held that, under *Younger*, the court was prohibited from enjoining the Nevada medical board's ongoing proceeding. 678 F.3d at 747 (explaining that, although qualified immunity did not bar equitable relief, *Younger* prohibited the injunction of the medial board's proceedings). The court concluded that the medical licensing investigation and disciplinary process was ongoing, involved a significant state interest—the regulation of health care—and provided adequate opportunity to raise federal questions on appeal. *Id*.

So too here. Just as in *Buckwalter,* OMB's disciplinary proceeding against Conklin is ongoing, involves the same important state interest of regulating healthcare, and Conklin can raise federal constitutional challenges through the appeals process. 678 F.3d at 747. The court must abstain from adjudicating Conklin's constitutional claims for injunctive relief against the individual defendants. Accordingly, Conklin's constitutional claims must be dismissed.

E.    ***State Law Claims***

Under ORS § 677.335, the individual defendants are immune from state law actions for conduct arising out of the disciplinary investigation. That immunity does not extend to Krishnaswami's inactivation of Conklin's *locum tenens* license, however. Because neither absolute immunity nor qualified immunity protects Krishnaswami from Conklin's state tort claims for intentional infliction of emotional distress and negligent infliction of emotional distress, the court turns to those claims. For each, Conklin fails to state a claim.

Page 25 – OPINION AND ORDER
*Conklin v. Oregon Medical Board, et al.*, 3:25-cv-01173-AR

*Intentional Infliction of Emotional Distress (IIED).* To assert an IIED claim, a plaintiff must prove three elements: (1) that the defendant intended to inflict severe emotional distress on the plaintiff, (2) the defendant's conduct caused the plaintiff severe emotional distress, and (3) the defendants conduct was an extraordinary transgression of the bounds of socially tolerable behaviors. *Babick v. Or. Arena Corp.,* 333 Or. 401, 411 (2002); *McGanty v. Staudenraus,* 321 Or. 532, 454 (1995). Establishing intent requires, at the motion to dismiss stage, only an allegation that the defendant acted with the purpose of causing the plaintiff severe emotional distress, not a showing of the defendant's knowledge that distress would occur. *Babick*, 333 Or. at 411. The infliction of actual mental suffering on the plaintiff must be the deliberate purpose of the defendant's conduct, but the defendants may have ulterior objectives as well. *Brewer v. Erwin*, 287 Or. 435, 457 (1979).

IIED does not provide recovery for temporary annoyance or injured feelings that can result from friction and rudeness among people in day-to-day life; it provides for recovery for extraordinary transgressions, such as conduct so offensive as to be "outrageous" or "outrageous in the extreme." *Hetfeld v. Bostwick*, 136 Or. App. 305, 308 (1995). The court must perform a fact-specific inquiry to determine whether conduct amounts to an extraordinary transgression. *Lanthrope-Olson v. Sept. of Transp.*, 128 Or. App. 405, 408 (1994).

Here, Krishnaswami's conduct related to Conklin's *locum tenens* license does not come remotely close to an "extraordinary transgression." Krishnaswami was merely doing her job of implementing statutory and administrative rules when she signed the letter informing Conklin that his medical license was changed to inactive status. The court is hard-pressed to imagine conduct that is less "outrageous in the extreme."

Page 26 – OPINION AND ORDER
*Conklin v. Oregon Medical Board, et al.*, 3:25-cv-01173-AR

*Negligent Infliction of Emotional Distress.* Conklin fails to plead a negligent infliction of emotional distress (NIED) claim. Under Oregon law, a plaintiff who has suffered emotional distress caused by a defendant's negligence ordinarily may not recover damages for the emotional harm without some sort of physical impact. *Norwest v. Presbyterian Intercommunity Hosp.*, 293 Or. 543, 558-61 (1982). There is no physical impact alleged in this case. Although there are some limited exceptions to that general rule (violation of a legal interest or an interest independent from the general duty to avoid foreseeable harm that is so important to the public that it justifies protection separate from the negligent conduct or a standard of care owed to the plaintiff that includes guarding against emotional distress, *I.K v. Banana Republic, LLC*, 317 Or. App. 249, 254 (2022); *Curtis v. MRI Imaging Servs. II*, 327 Or. 9, 14-15 (1998)), those exceptions do not apply here.

Consequently, for conduct not protected by absolute or qualified immunity, or sovereign immunity, Conklin fails to plausibly allege claims for intentional or negligent infliction of emotional distress.

## F.    *Injunctive and Declaratory Relief*

Finally, Conklin asserts claims for injunctive relief and a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201. But those claims are remedies, not independent causes of action. *See Ajetunmobi v. Clarion Mortg. Cap., Inc.*, 595 F. App'x 680, 684 (9th Cir. 2014) ("Declaratory and injunctive relief are remedies, not causes of action."); *Stock W., Inc. v. Confederated Tribes of the Colville Rsrv.*, 873 F.2d 1221, 1225 (9th Cir. 1989) (Declaratory Judgment Act "only creates a remedy and is not an independent basis for jurisdiction");

*Charleston v. Wells Fargo Bank, N.A.*, 3:17-cv-00595-PK, 2018 WL 648364, at \*2 (D. Or. Jan. 31, 2018) (collecting cases).

Because Conklin has failed to adequately plead any of his claims, his claims for injunctive and declaratory relief must also be dismissed. *Cf. Harney v. Associated Materials, LLC*, 3:16-cv-1587-SI, 2018 WL 468303, at \*8 (D. Or. Jan. 18, 2018) (denying defendant's motion to dismiss claims for declaratory and injunctive relief where plaintiffs stated claims that "exist[ed] independently" of those claims but noting that requests for declaratory and injunctive relief are remedies and should be "pleaded as such" in an amended complaint); *see also Countrywide Home Loans, Inc. v. Mortgage Guar. Ins. Corp.*, 642 F.3d 849, 853 (9th Cir. 2011) ("The appropriate inquiry for a distinct court in a declaratory Judgment Act case is to determine whether there are claims in the case that exists independent of any requests for purely declaratory relief.").

## G.    *Leave to Amend*

The court has a duty to construe unrepresented plaintiffs' pleadings liberally, affording them the benefit of any doubt. *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012). Thus, pro se litigants ordinarily are granted liberal leave to amend. *See id.*, ("A district court should not dismiss a pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'") (quoting *Schucker v. Rockwood*, 846 F.2d 1202, 1203-04 (9th Cir. 1988) (per curiam)).

The Ninth Circuit recently declined to extend that leniency to pro se plaintiffs who are also licensed attorneys, however. *See Huffman v. Lindgren*, 81 F.4th 1016 (9th Cir. 2023). Pro se plaintiffs enjoy leeway because they are presumably unskilled in the law and prone to making

Page 28 – OPINION AND ORDER
*Conklin v. Oregon Medical Board, et al.*, 3:25-cv-01173-AR

pleading errors. *Id.* at 1021 (citation omitted). *Huffman* joined with other circuits in holding that "that logic does not apply to practicing attorneys." *Id.*

Conklin, although he is representing himself, is a licensed attorney in Washington and has included his active Washington bar number on all his pleadings. The court also observed Conklin's advocacy skills at oral argument and cannot conclude that he is an unsophisticated litigant. Accordingly, the court declines to construe his pleadings with any deference owing to his pro se status and concludes that any amendment would be futile.

Where, as here, defendants are immune from suit, "dismissal without leave to amend is proper." *Huffman*, 81 F.4th at 1022. As alleged against OMB, Conklin's § 1983 claims (Claims 1-4) and tort claims (Claims 5 and 6) are dismissed with prejudice and without leave to amend. As alleged against the individual defendants, Conklin's § 1983 claims are dismissed with prejudice and without leave to amend.

As much as Conklin's tort claims are premised on OMB's investigation and disciplinary action, the individual defendants are immune under Oregon law. To the extent those claims are premised on Krishnaswami's deactivation of Conklin's *locum tenens* license, those claims fail on their merits and no additional facts could cure those deficiencies. Accordingly, Conklin's state law claims must also be dismissed with prejudice and without leave to amend. Because all of Conklin's claims are dismissed with prejudice and without leave to amend, his claims for declaratory and injunctive relief must be dismissed with prejudice as well.

/ / / / /

/ / / / /

/ / / / /

Page 29 – OPINION AND ORDER
*Conklin v. Oregon Medical Board, et al.*, 3:25-cv-01173-AR

## CONCLUSION

For the above reasons, defendants' motion to dismiss (ECF 18) is GRANTED. Conklin's complaint is dismissed with prejudice and without leave to amend.

DATED: June 12, 2026

_____
JEFF ARMISTEAD
United States Magistrate Judge